EDWARD L. O'CONNOR, Appellee, v. C. B. MURTAGH, Comptroller, Appellant.

No. 44270.

SEPTEMBER 27, 1938.

REHEARING DENIED JANUARY 20, 1939.

John H. Mitchell, Attorney General, N. S. Genung, and Charles W. Wilson, Asst. Attorney General, for appellant.

Edward L. O'Connor, pro se.

RICHARDS, J.—In view of the nature of the controversy that is found in this appeal, it will be conducive to clarity if we first make reference to the statutory law that is involved.

Chapter 188 of the Acts of the 45th General Assembly was

approved April 24, 1933. We will quote therefrom the title and certain sections that we deem material, the same being:

"AN ACT to establish the general fund for the state of Iowa, for the biennium beginning July 1, 1933, and ending June 30, 1935, and to appropriate therefrom for all departments and various divisions thereof, of the state of Iowa, for all purposes provided by law, for the said biennium.

*"Be it enacted by the General Assembly of the State of Iowa*:

"Section 1. That the amount derived from direct taxation, other than from the bonus levy, during the fiscal years beginning July 1, 1933, and July 1, 1934, and ending June 30, 1934, and June 30, 1935, respectively, and all revenue from sources other than direct taxation which is available for appropriations for state purposes, and all other money in the state treasury which is not by law segregated, shall be established as a general fund, and so much thereof as may be necessary, shall be, and the same is hereby appropriated for the biennium beginning July 1, 1933, and ending June 30, 1935, in the following manner and for the following uses, to wit:

\* \* \*

## DEPARTMENT OF JUSTICE

"Sec. 26. For the department of justice there is hereby appropriated for each year of the biennium beginning July 1, 1933, and ending June 30, 1935, the sum of eighty-six thousand nine hundred seventy-three dollars and eighty cents ($86,973.80) or so much thereof as may be necessary, to be used in the following manner:

For salary of the attorney general.............$ 5,000.00
For salaries, support, maintenance and
    miscellaneous purposes.....................$81,973.80

Grand total of all appropriations for all purposes
    for each year of the biennium for the depart-
    ment of justice...........................$86,973.80

\* \* \*

"Sec. 62. All salaries provided for by this act are in lieu of all existing statutory salaries, for the positions provided herein, and shall be payable in equal monthly or semimonthly

installments, and shall be in full compensation for all services except as otherwise expressly provided.

"In all cases the amount of the salary or per diem which has been fixed by the various appropriations shall be considered the maximum amount available for the respective position and it shall be the duty of the heads of the various departments to use discretion in the matter of compensating employees, within the limits provided by this act. * * *

* * *

"Sec. 70. Where any provisions of the laws of this state are in conflict with this act the provisions of this act shall govern for the biennium."

* * *

In like manner in chapter 188 appropriations were made for more than fifty departments and divisions thereof including the departments of the governor, adjutant general, the supreme court, the district court judges, the secretary of state, the treasurer of state, and many others.

Another of the acts of the 45 G. A. that is mentioned in the arguments is chapter 89, which purported to amend many sections of the Code relating to the salaries of public officials, a portion of the chapter being the following:

"Sec. 3. (Attorney General) Amend section one hundred fifty-three-c one (153-c1), code, 1931, by striking from line two (2) the words 'six thousand' and substituting therefor the words 'five thousand'."

Section 153-c1, Code 1931, referred to in foregoing section 3 of chapter 89 reads as follows:

"Salary. The salary of the attorney general shall be six thousand dollars per annum, and the salaries of the first assistant attorney general and other assistant attorneys general shall be such as may be fixed by law."

In Smith v. Thompson, 219 Iowa 888, 258 N. W. 190, it was held that said chapter 89, Acts 45th G. A. had been enacted in a manner that was violative of the constitution of Iowa.

Plaintiff was the attorney general of this state from the second secular day of January 1933 to the same day in 1937. The defendant has been the comptroller of the state of Iowa at

all times since July 1, 1933. Beginning with May 15, 1933, and ending with June 30, 1933, plaintiff, as attorney general, filed with the state auditor four semimonthly requisitions for salary, stating in each requisition that his annual salary was $5,000 and his semimonthly portion thereof was $208.33. Commencing on July 15, 1933, and ending June 30, 1935, plaintiff filed with the defendant-comptroller, 48 similar semimonthly requisitions for salary as attorney general, in each of which plaintiff likewise stated his annual salary to be $5,000 and his semimonthly portion thereof to be $208.33. A warrant was duly issued conformably with each of the 52 requisitions, and resultantly plaintiff received his salary at the rate of $5,000 per year during the period that is involved in this controversy, that is, May 1, 1933, to June 30, 1935.

On December 31, 1936, plaintiff filed with defendant, as state comptroller, a paper, designated by plaintiff as an official salary pay voucher. As an aid in making clear the contents of this writing, we set out the heading and first six items, as follows:

December 29, 1936

> Payment Authorized by
> Chap...... Sec......st. G. A.
> Code Sec. 153-c1, 1218 and
> Sec. 12 Art. V Constitution.

PAY ROLL

ATTORNEY GENERAL DEPARTMENT

The State of Iowa, Dr.

| Name | | | Title | | Period | Annual Rate | Amt. Due |
|------|---|---|-------|---|--------|-------------|----------|
| Edward L. O'Connor | | | Atty Gen'l. | | 5-15-33 | $6000.00 | $41.67 |
| " | " | " | " | " | 5-31-33 | $6000.00 | $41.67 |
| " | " | " | " | " | 6-15-33 | $6000.00 | $41.67 |
| " | " | " | " | " | 6-30-33 | $6000.00 | $41.67 |
| " | " | " | " | " | 7-15-33 | $6000.00 | $41.67 |
| " | " | " | " | " | 7-31-33 | $6000.00 | $41.67 |

Following the six items above set out are similar and consecutive semimonthly items down to and including June 30, 1935. The writing shows a summation of the 52 semimonthly items found in the column "Amount Due", in the amount of $2,166.84. Attached to this paper was a certificate signed by plaintiff that

"the persons above listed are entitled to the amount of compensation indicated opposite their respective names for the period specified hereon." Upon this writing being presented to defendant-comptroller, he sought the opinion of the attorney general who became the incumbent of that office on the second secular day of January 1937. That attorney general advised that a warrant could not be issued, lawfully, for the $2,166.84. Accordingly, defendant refused to issue any warrant for any of the items shown in said writing.

On May 28, 1937, plaintiff brought this equity action against C. B. Murtagh, as comptroller of the state of Iowa, as the defendant thereto. Inter alia the petition alleged that plaintiff was not paid his full statutory, legitimate and valid salary for his services as attorney general; that there is a balance due and owing plaintiff in the sum of $2,166.84 as the balance of his official salary; that it is the mandatory duty of the defendant to issue to plaintiff a proper salary warrant in the amount of $2,166.84; that the issuance of said warrant is a purely ministerial duty imposed by law on defendant as state comptroller; that as such state comptroller defendant has no discretionary power or duty in the matter of issuance of said salary warrant; that plaintiff's claim is a liquidated and legalized demand. The relief prayed was the issuance of a peremptory order of mandamus, directed to the defendant and commanding him forthwith to issue to plaintiff an official salary warrant for $2,166.84; that defendant be required to pay the costs, and that plaintiff be awarded general equitable relief. Upon a trial on the merits the district court adjudged and decreed that a peremptory order of mandamus issue, directed to defendant, commanding that he immediately issue to plaintiff a salary warrant as prayed, and that the costs be taxed to defendant. On the same day the peremptory order of mandamus issued. The defendant-comptroller has appealed.

First considering separately the items of plaintiff's claim for salary during the biennium period, July 1, 1933, to June 30, 1935, we encounter, in the statutes above quoted, certain things that are meaningful. That is, the legislature, by enacting chapter 188, in unambiguous terms, "appropriated for each year of the biennium beginning July 1, 1933, * * * for salary of the attorney general, $5000.00. * * *." Section 26.

In like unambiguous language in section 62 of this chapter the legislature declared that:

"All salaries provided for by this act are in lieu of all existing statutory salaries, for the positions provided herein, * * * and shall be in full compensation for all services except as otherwise provided. In all cases the amount of the salary * * * which has been fixed by the various appropriations shall be considered the maximum amount available for the respective position * * *." Section 70 of the same chapter provides: "Where any provisions of the laws of this state are in conflict with this act the provisions of this act shall govern for the biennium."

On their face these statutes fixed the amount of the salary of the attorney general, during this biennium, at $5,000 per year, and limited to $5,000 per year the appropriation of public funds, for the payment of this salary, and also, on its face, the express limitation found in this act, to the effect that said amount shall be considered the maximum amount available for that purpose, left no room for the issuance by the comptroller to plaintiff of any warrants in excess of $5,000 per year. The comptroller was bound to observe the constitutional provision that no money shall be drawn from the treasury but in consequence of appropriations made by law. Article III, section 24.

But plaintiff does not accord chapter 188 its seeming import, and says this chapter does not determine the controversy. His reliance is largely upon section 153-c1, Code 1931, above quoted. Plaintiff's argument is that certain words in that section, viz: "The salary of the attorney general shall be six thousand dollars per annum", constitute a continuing appropriation, and that it is not necessary that there should be special annual appropriations for the payment of such salaries. Plaintiff cites Prime v. McCarthy, 92 Iowa 569, 61 N. W. 220, a case that had to do with section 120 of the code of 1873, as amended by chapter 142 of the Acts of the 16th G. A. The question was whether the payment of a certain claim was authorized by that section, the doubt arising from the fact that the section did not employ the language usually found in laws appropriating money. The following is from the opinion [page 578 of 92 Iowa, page 223 of 61 N. W.]:

"If it be doubtful whether the legislature intended by that

section that necessary and lawful expenses not otherwise provided for should be paid upon the certificate of the executive council, the section should not be so construed; but, if such was clearly the legislative intention, such a construction is warranted. The section not only provides that the council shall audit and certify necessary and lawful expenses not otherwise provided for, but that the warrants drawn therefor shall be paid by the treasurer of state.''

The opinion gives consideration to the fact that for many years expenses incurred in providing the several officers named in section 120, as therein authorized, have been paid under the authority of that section alone, without special appropriations having been made therefor, and to the fact that these payments made during the biennial period have been reported in detail to each succeeding general assembly. The court concluded that it seemed that the general assembly acquiesced in the right to make these payments under section 120, from the fact that it made no other, or more specific, appropriations for the expenses which were being thus paid. In construing this particular statute, the court reached the conclusion, upon the showing made, that it was the legislature's intention under section 120, that all expenses authorized under it should be paid out of any money in the treasury not otherwise appropriated, upon certificate of the executive council, and that upon such certificate it was the duty of the auditor to draw a warrant and of the treasurer to pay the same. Plaintiff also cites State ex. rel. Birdzell v. Jorgenson, 25 N. D. 539, 142 N. W. 450, 49 L. R. A., N. S., 67, a case which goes farther than several of the authorities it cites, in recognizing the rule that the language of a statute may indicate an intent to make an appropriation, in a continuing manner, for the payment of salaries of officials. It would not be profitable to attempt to analyze the wording of the various statutes that have been held to indicate a legislative intent to make continuing appropriations, in other jurisdictions. It is sufficient to say that we find no sound reasonableness in the proposition that our legislature intended that section 153-c1 be interpreted as a statute that made continuing appropriations. On the contrary, negation of the proposition is found in the legislative history of Iowa. Section 3770, Code of 1873, provided:

''The salary of the attorney general shall be fifteen hundred dollars per annum, &ast; &ast; &ast;.''

The original enactment is found in chapter 67 of the Acts of the 11th G. A. (1866). The same legislature, in chapter 93, appropriated for the salary of the attorney general for the term of two years, ending December 31, 1867, the sum of $2,950, or so much thereof as may be necessary. The 12th to the 47th General Assemblies inclusive, each made appropriations of fixed amounts for the attorney general's salary for the respective bienniums. The 39th G. A. (1921), ch. 209, §13, struck from section 211 of the 1913 Supplement the entire provision specifying the amount of salary of the attorney general, with the result that from 1921 until 1929 there was no statute, excepting appropriation acts, that named the amount of the salary of the attorney general. The 43d G. A. (1929), ch. 2, enacted a statute by which again the amount of the salary of the attorney general was named, the amount so named being $6,000 per annum. This enactment now appears as section 153-c1, Code 1931. But at the same session of the 43d G. A., ch. 287, in which the amount of salary of the attorney general was so designated, the amount appropriated from the public funds for the salary of the attorney general for each year of the biennium beginning July 1, 1929, was the sum of $5,000.

This 69 or more years of legislative history is quite eloquent of the legislature's intent and practice. It bespeaks a steadfast respect for and a sedulous observance of the provisions of our constitution, that no money shall be drawn from the treasury but in consequence of appropriations made by law. It weakens to the vanishing point the theory that section 153-c1 should be construed as indicating an intent on the part of our legislature, to make appropriations that would be continuous, through bienniums yet to come. If there be doubt as to the soundness of plaintiff's theory, the section should not be construed as making continuing appropriations. Prime v. McCarthy, 92 Iowa 569, 61 N. W. 220. It appeals to us there is more than mere doubt. In fact we are quite satisfied that plaintiff's proposition is without substance. In construing statutes, and ascertaining the intent of the legislative branch of the government, the courts will take into consideration the settled practices of a legislative body. State v. Clausen, 78 Wash. 103, 138 P. 653. And if there is one out-

standing feature in the legislative history that has been outlined, it is the fact that every succeeding biennial legislature, without exception, has made specific appropriations for salaries of the attorneys general. In Prime v. McCarthy, supra, it is said:

"It seems to us reasonably clear that *if it was not intended* that the expense incurred for the several purposes named in section 120 * * * were to be paid under authority of that section, *the general assembly would surely have made specific appropriations therefor.*" (Italics supplied.)

Conversely, the specific appropriations, for so long made by every general assembly, relegate to "innocuous desuetude" the theory that continuing appropriations had been provided. On this point see also Shattuck v. Kincaid, 31 Ore. 379, 49 P. 758.

The foregoing is intended as a discussion of plaintiff's demands for the biennium period, July 1, 1933, to June 30, 1935. There having been no appropriation against which a warrant could have been lawfully drawn, excepting the $5,000 per year appropriated by chapter 188, and which plaintiff received, it follows that so far as salary during that biennium period was concerned there was no duty resting upon defendant-comptroller to issue a warrant.

█ There remains for consideration plaintiff's demand for salary during the months of May 'and June, 1933, as set out in the first four items of the writing filed with the comptroller on December 31, 1936. Regardless of whether plaintiff has waived his alleged interests in additional salary for those two months, he permitted such period of time to pass before filing his claim, that the comptroller no longer had authority to authorize payment, on account of section 84-e13, Code 1935, which reads:

"84-e13. Claims—limitations. The state comptroller shall be limited in authorizing the payment of claims, as follows:

1. Six months limit. No claim shall be allowed by the state comptroller's office when such claim is presented after the lapse of six months from its accrual. * * *."

It also appears, under the provision of section 65, chapter 257, Acts of 44th G. A. that the unexpended balance, if any, of the biennial appropriation for the department of justice had reverted to the general fund at the time plaintiff filed the writing, making any appropriation there may have been no longer

available as a fund against which defendant could have drawn a warrant.

Defendant having been under no duty to issue a warrant for any part of plaintiff's claim the trial court erred in entering its judgment and decree. Plaintiff was not entitled to any of the relief he prayed. The case is reversed to the end that a proper decree may be entered in the district court. There are several other points raised in appellant's brief that have not been determined. One such question is whether in effect this was an action brought against the state of Iowa without its consent.—Reversed.

SAGER, C. J., and DONEGAN, HAMILTON, and STIGER, JJ., concur.