GEO. H. FRANCE, Appellant, v. CITY OF DES MOINES et al., Appellees.

MUNICIPAL CORPORATIONS: Bridge Bonds—Limitations. Any indebtedness for the construction of bridges, under Sec. 758-d, Code Supp., 1913, is valid, when such indebtedness, plus all other indebtedness of the city, does not exceed 5 per centum of the actual value of the taxable property of the city. In other words, the additional power of a city under Sec. 758-d is not restrained within the 1¼ per centum limitation provided by Sec. 1306-b, Code Supp., 1913.

SALINGER, J., dissents.

*Appeal from Polk District Court.*—LAWRENCE DE GRAFF, Judge.

JUNE 27, 1918.

THIS is a suit by a resident and taxpayer of the city of Des Moines, to restrain the defendants, who are the mayor, city council, and officers of said city, and William Horrabin,

contractor, from carrying out the terms of a contract between the said city and Horrabin, for the construction of a bridge across the Des Moines River at a point connecting University Avenue with North Street in said city, and to restrain the issuance and sale of bonds in the sum of $400,000 for that purpose. The contract complained of was entered into on June 22, 1917; and on July 1st, the bid of Messrs. Bolger, Mosser & Willaman, intervenors, for the bonds, was accepted by the proper officers of said city. There is little or no conflict in the evidence, and much of the record is made up of stipulations of the parties. The court below, after a hearing on the merits, dismissed plaintiff's petition, and he appeals. Further necessary facts will be mentioned in the course of the opinion.—*Affirmed.*

*Dunshee, Haines & Brody,* for appellant.

*H. W. Byers, Guy A. Miller, D. Cole McMartin, E. J. Kelly, W. H. Bailey,* and *Parsons & Mills,* for appellees.

STEVENS, J.—I.  Appellant's complaint is based upon the contention that, at the time the contract between the defendant city and Horrabin was entered into, the outstanding indebtedness of the city exceeded 1¼ per centum of the actual value of the taxable property within said city, and that the contract creates an indebtedness in excess of the city's authority, and void.

The city of Des Moines is a city of the first class; and, prior to the enactment of Sections 758-d and 758-e by the thirty-fourth general assembly, in the matter of bridges possessed only the authority conferred thereon by Section 758 of the Code of 1897 and Section 758-a of the 1913 Supplement thereto.

As this appeal involves a construction of Sections 758-d, 758-e, and 1306-b of the Supplement to the Code, 1913, we copy the same in full:

"Section 758-d.  That cities of the first class are hereby

authorized to contract indebtedness and to issue bonds for the purpose of constructing bridges. Such bonds shall be payable in not exceeding twenty annual installments and bear interest at not exceeding five per centum per annum, and shall be made payable at such place and be of such form as the city council shall by ordinance designate. But no city shall become indebted in excess of five per centum of the actual value of the taxable property of said city as shown by the last preceding assessment roll."

"Section 758-e.  This act shall be construed as granting additional power without limiting the power already existing in cities of the first class."

"Section 1306-b.  No county or other political or municipal corporation shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in, the aggregate the amount of one and one-fourth per centum of the actual value of the taxable property within such county or corporation, except that cities and incorporated towns may for the purpose of purchasing, erecting, extending or maintaining and operating waterworks, electric light and power plants, gasworks and heating plants or of building and constructing sewers, incur an indebtedness, not exceeding in the aggregate, added to all other indebtedness, five per centum of the actual value of the taxable property within such city or incorporated town.  The amount of such taxable property shall be ascertained by the last state and county tax list previous to the incurring of such indebtedness."

Sections 758 of the Code and 758-a of the Supplement conferred authority upon cities to incur indebtedness, or issue bonds, for the construction of bridges within certain narrow limits only.  General power to incur indebtedness and issue bonds for the purpose of constructing bridges was first conferred by the provisions of Section 758-d.

The authority of counties and cities to incur indebted-

ness, in any manner and for all purposes, is limited by Section 1306-b to 1¼ per centum of the actual value of the taxable property thereof, except for certain designated purposes, therein fully set forth.

The contention between counsel at this point is as to whether the power conferred upon cities of the first class by Section 758-d, which, by Chapter 184 of the Acts of the Thirty-sixth General Assembly was extended to cities of the second class traversed by streams not less than 200 feet in width from shore line to shore line, must be exercised within the 1¼ per centum limitation; or whether indebtedness therefor may be incurred, when added to all other outstanding indebtedness, under the provisions of Section 758-d, to the extent of 5 per centum of the actual value of the taxable property of such city or incorporated town.

By act of the twenty-eighth general assembly (Chapter 41), the authority of cities and towns to incur indebtedness was first limited to 1¼ per centum of the actual value of the taxable property thereof. The thirtieth general assembly (Chapter 43) repealed the act of the twenty-eighth, and fixed the limit at 2½ per centum, but authorized them to purchase, or erect, waterworks and sewerage systems. This enactment was repealed by the thirty-first general assembly (Chapter 49), and the 1¼ per centum limitation restored; but cities and incorporated towns were authorized to incur indebtedness in excess thereof "for the purpose of purchasing, erecting or maintaining and operating waterworks, electric light and power plants, gas works and heating plants or of building and constructing sewers,  *  *  * not exceeding in the aggregate, added to all other indebtedness, five per centum of the actual value of the taxable property within such city or incorporated town. The amount of such taxable property shall be ascertained by the last state and county tax list previous to the incurring of such indebtedness."

The thirty-seventh general assembly (Chapter 85) amended Section 1306-b by striking therefrom the words "or for any purpose," and inserting in lieu thereof the words "for its general or ordinary purposes." . Evidently, the limitation placed by the legislature upon the power of counties and political and municipal corporations to incur indebtedness was for the purpose of preventing waste and extravagance in the expenditure of the funds belonging thereto, and for the same purpose is retained, but given a somewhat enlarged application by the amendment of the thirty-seventh general assembly (Chapter 85), referred to above. The rapid growth of cities and incorporated towns in population and industry necessitated better sanitary regulations and other improvements, such as heating, electric light and power plants, waterworks, gas works, and other public improvements of like character; but the expense of these could not be met, within the limit fixed by the legislature for cities in the matter of incurring indebtedness. Further authority to incur indebtedness was required. The 1¼ per cent limitation was retained; but, as appears from the above extract from the Acts of the Thirty-first General Assembly (Chapter 49), the authority of cities and incorporated towns to incur additional indebtedness for certain purposes was very much enlarged.

It is the contention of counsel for appellee that Sections 758-d and 758-e, supra, were enacted by the thirty-fourth general assembly for the purpose of enabling cities of the first class which are traversed by large streams to erect necessary and indispensable bridges for the accommodation of traffic and other necessities of modern city life; and that it was not intended that the power therein conferred should be exercised only within the narrow limitation of Section 1306-b, but, as in the case of electric light, heating and power plants, sewers, etc., in excess thereof. Section 758-e provides that Section 758-d "shall be con-

strued as granting additional power without limiting that already existing in cities of the first class."

Prior to the enactment of the above sections, cities had authority to construct bridges; but their resources for that purpose were very limited.  The power conferred by Section 758-d is to contract indebtedness and issue bonds for the purpose of constructing bridges.  As we understand their argument, counsel for appellant concede this, but vigorously contend that it must be exercised within the 1¼ per centum limitation provided by Section 1306-b.  The power conferred upon cities by the latter section is to contract certain indebtedness, within the 1¼ per centum limitation therein contained, and certain other indebtedness in excess thereof.  If the power to incur indebtedness for the purpose of constructing bridges is to be exercised within the limitation of Section 1306-b, then it is not additional thereto.  The power to contract indebtedness for the construction of bridges is for a new and independent purpose,—one not previously existing.  Unless the power thus conferred was intended by the legislature to be exercised in addition to that already existing, as is plainly declared by Section 758-e, there could have been no reason for the enactment of Section 758-d.  It is true that the limitation fixed is the same as that fixed by the Constitution; but it will be observed that it is quite common for the legislature, following a grant of power to cities and municipal corporations to incur additional indebtedness, to provide that such power shall not be exercised in excess of 5 per centum of the actual value of the taxable property thereof.  While the latter provision of Section 758-d is prohibitory in form, it impliedly permits cities to incur indebtedness for bridge purposes up to the 5 per centum limitation; provided, however, and as a matter of course, that all other indebtedness must be taken into consideration at the time of contracting indebtedness for bridge purposes; and the total indebtedness there-

for, when added to all other indebtedness of such city, must not exceed the statutory and constitutional limitation.

The evident purpose of the legislature was to make such provision as would enable cities traversed by streams requiring bridges which would involve the expenditure of large sums of money, to construct larger and more expensive bridges than was possible under the law as it then was. Authority had already been conferred upon them to construct and acquire waterworks, electric light and power plants, sewerage systems, and many other modern public conveniences and necessities. Further power was necessary, to enable them to provide funds with which to erect bridges. The legislature was careful, in conferring power upon them to contract indebtedness and issue bonds for that purpose, to declare the same additional to that already existing to incur indebtedness for other purposes.

It is urged by counsel for appellant that, had it been the intention of the legislature to enlarge the power of cities to contract indebtedness and issue bonds for the construction of bridges up to the full constitutional limit, it would doubtless have so specifically designated. There is no doubt that an additional word or two would have made the construction and application of these statutes clear and easy; but we have no doubt that it was the legislative purpose to confer new and additional power upon cities to incur indebtedness for the construction of bridges, in addition to that already existing to incur indebtedness for other purposes, and that the same may be exercised without reference to the provisions and limitations of Section 1306-b. The tendency of the legislature to confer power upon cities to provide necessary public improvements is further emphasized by the provisions of Chapter 85, Acts of the Thirty-seventh General Assembly, amending Section 1306-b so as to make the 1¼ per centum limitation apply only to indebtedness incurred "for its general or ordinary purposes."

Other interesting questions are discussed by counsel; but, in view of the construction we have given to the above statutes, it is unnecessary for us to discuss or decide them. It therefore follows that the judgment of the court below is—*Affirmed.*

PRESTON, C. J., LADD, WEAVER, EVANS, and GAYNOR, JJ., concur.

SALINGER, J. (dissenting). At one time, Section 1306-b, Code Supplement, 1913, limited all municipal indebtedness to 1¼ per cent, except as to matters specified, which do not include the building of bridges. If I understand the majority aright, its sole defense of the judgment below is that said statute was so amended by Chapter 39 of the Acts of the Thirty-fourth General Assembly (now Sections 758-d and 758-e of the Code Supplement, 1913), as to confer authority to do what defendants did. The defendant city does not fully agree with this. It asserts in its demurrer that necessary new authority was also, if not wholly, created by an act of the thirty-seventh general assembly. Indeed, it is only by inference the demurrer claims anything for the work of the thirty-fourth. Its only specific allegation as to what made the necessary change in Section 1306-b is that it was an act of the thirty-seventh. This last act did not become effective until after the doing of what appellant complains of. The act is presumed to be, and is, in fact, prospective only, and is not and does not purport to be a special or curative act. In my opinion, it is not available if, without it, the law gives no authority for what was done. And, of course, if there was such authority before the thirty-seventh general assembly acted, it does not matter that its act failed to give such authority. Notwithstanding the position taken by the demurrant, I think the opinion must be treated as upholding what was done by the defendants on the sole ground that the necessary power was given by act of the thirty-fourth general assembly.

In arguing that the act of that assembly gave the neces-
sary power, much stress is laid upon the fact that one sec-
tion of the statute declares the act shall be construed "as
granting additional power without limiting the power al-
ready existing in cities of the first class."   It is not clear to
me why this expository section is very controlling on the
matter we have for decision.   Had there been no such sec-
tion, the act could scarcely have been construed into limit-
ing the power of cities to go into debt for bridge building.
The existing law declared, in terms, that the limit should be
1¼ per cent for all purposes which, by the specifications as
to what objects the limitations should not apply to, left the
statute a prohibition to go in debt above 1¼ per cent for
many things, including bridge building.   In other words,
before the act of the thirty-fourth general assembly, the
law, in effect, did not permit as much as a debt of 1¼ per
cent for bridge building.   A further limitation upon such
statute law must be something that forbids going in debt
at all, or limits the power to go in debt to a point even lower
than it was before.   All must concede that the act of the
thirty-fourth general assembly does neither of these things,
and is, in truth, not an additional limitation.   But how is
the fact that this is so material?   How does a direction
that something which is, in truth, not a new limitation,
shall not be construed to be such limitation, furnish evidence
that a specific enlargement has been made?   The act of the
thirty-fourth general assembly may be such enlargement,
but that must be found from words of enlargement, and not
from a self-evidently correct declaration by the legislature
that it has not created an additional limitation.   And I am
unable to see how a legislative declaration that a statute
does give additional power is relevant argument to prove
that some particular additional power is given by the statute
in which such declaration is found, or even that such dec-
laration proves that *any* addition to power has been made.

Whether additional powers are given by a statute may not be determined by a rider to the effect that the act shall be construed to give additional powers, and not to limit powers already possessed. If existing law authorize a city to punish fast driving by a fine of not more than $50, and an amending statute authorize such fine in specified cases to go up to $75, such amendment, on its own face, would be an enlargement of power, without limitation upon any already possessed. That would be so if there were no rider directing that it be so construed. And though there be such rider, it cannot in the least add anything to what the amendment does, in fact, give. In one word, the expository clause found in the 'act of the thirty-fourth general assembly has, it seems to me, no bearing on determining whether the act gave enlarged power as to going in debt for bridges, or, if it does, what that enlargement is.

Coming now to an examination of the act as written, it appears that no authority is granted except this: Cities of the first class are "hereby authorized to contract indebtedness and to issue bonds for the purpose of constructing bridges." Despite the declaration in the statute that this gives additional power, the fact is otherwise. Before the passage of this statute, cities were authorized to contract indebtedness and to issue bonds for the purpose of constructing bridges. See Section 758, Code of 1897, and Sections 758-a to 758-c, inclusive, Code Supplement, 1907. Again, Section 1306-b, Code Supplement, 1913, recognized there was power to go in debt for obtaining bridges, because it authorized going in debt for several purposes which, it is conceded, included the getting a bridge. One may concede, for the sake of argument, that the act of the thirty-fourth made some changes in using the power to go in debt, and in evidencing a debt "for the purpose of constructing bridges;" but it added nothing to the abstract power to contract indebtedness in some amount, and to issue bonds for the con-

struction of bridges; and surely, the naked fact that the act of the thirty-fourth authorized going in debt and issuing bonds to obtain bridges, if an additional power, is not an enlargement of the debt limit.   Surely, the authority given "to contract indebtedness and to issue bonds for the purpose of constructing bridges," pretends neither to enlarge the amount of the debt that may be contracted nor to lower it.   The next provision of the amendatory statute relied on is that the bonds which it authorizes shall be payable in installments, not exceeding 20, bear interest not exceeding 5 per cent, and be in such form and payable at such place as the city council shall, by ordinance, designate.   Concede that this is an enlargement on the method of carrying an improvement by bonds, what is there in it that gives the slightest additional power to go in debt more than theretofore existing law permitted?   Surely, a permission "to contract indebtedness," a permission to secure such indebtedness by a bond issue, and a direction as to form, rate of interest, and the like, of these bonds, gives, despite a declaration that additional powers are created, no additional power, and, for that matter, no power at all to enlarge the permitted debt.   If, then, the declaration of the rider is borne out, that must be so because the statute in question provides, further, that no city "shall become indebted in excess of 5 per centum of the actual value of the taxable property of said city, as shown by the last preceding assessment roll." Notwithstanding the rider, I am unable to see how it can be held that this is not a limitation of power, but is an addition to power.   Certainly, it is not a grant of power, much less of additional power, to incur indebtedness, to declare that indebtedness shall not be in excess of a limitation fixed.   I agree, however, that this is not a limitation of the powers already existing.   It is, instead, a restatement of a limitation that always did exist, is one fixed by the Constitution, and is, therefore, one which no legislature could

change. A statement in a statute that no city should, in any event, become indebted in excess of the amount of the debt as limited by the Constitution, does not, as I view it, have the slightest bearing on whether a statute debt limit, declaring that not more than a stated part of said 5 per cent maximum is available for a stated purpose, has been enlarged. There is much more reason for claiming that the act of the thirty-seventh general assembly made the change which all agree was necessary. Section 1306-b, Code Supplement, 1913, provided, in manifest effect, that the aggregate amount of debt to pay for getting bridges and many other things should be 1¼ per cent. Chapter 85 of the Acts of the Thirty-seventh General Assembly so changed the law as that this limitation of 1¼ per cent became the limitation upon debt "for general or ordinary purposes." It is, of course, true that the building of a bridge in a great city is not an expenditure for general or ordinary municipal purposes, and the act of the thirty-seventh general assembly may fairly be said to enlarge the limit of 1¼ per cent, so far as bridge building is concerned. It is, no doubt, on this reasoning that the demurrer of the city urged the act of the thirty-seventh general assembly as an authorization. It is true, as I have said, that this act became effective too late to be available to these defendants. But that does not eliminate it as an element in construction. It indicates strongly the legislature was of opinion that, until this last act was passed, there had been no enlargement of the limitation which made bridge building a partner in an aggregate limitation of debt to 1¼ per cent.

The majority concedes, as said, that the defendants exceeded the authority given them by law, unless Chapter 39 of the Acts of the Thirty-fourth General Assembly so amended 1306-b, Code Supplement, 1913, as to authorize thereafter what was not authorized before. I have tried to point out why, despite the fact that said Chapter 39 declares the

act shall be construed as granting additional power with-
out limiting the power already existing, nothing in the chap-
ter removed the debt limit theretofore existing, and that, if
same was changed, it was by the act of the thirty-seventh
general assembly, which became law too late to avail the ap-
pellees. ·

What I have said is on the assumption that the opinion
is based wholly on a plain change of the statute, and I have
addressed myself wholly to giving my views on whether the
amendment will sustain the act of these defendants.   The
briefs present other points which, I take it, are material
only if the amendment relied upon was insufficient.   They
are such arguments as that, if the act complained of was one
authorized by the law, as it was when the cause was tried,
an injunction should not issue though the act was illegal
when done; and that the passing of bonds to innocent pur-
chasers will deny the injunction though the issue was not
authorized by law.   I do not think either position is well
taken.   But, at most, these are avoidance arguments, and
where I differ with the majority is in its holding that there
is nothing to avoid.   I would reverse.