C. C. SLAPNICKA et al., taxpayers on behalf of themselves and all other citizens and taxpayers of Cedar Rapids, appellants, v. CITY OF CEDAR RAPIDS, a municipal corporation, ROBERT M. L. JOHNSON, mayor, et al., appellees.

No. 51891.

(Reported in 139 N.W.2d 179)

DECEMBER 14, 1965.

Robert C. Nelson and John B. Reilly, both of Cedar Rapids, for appellants.

David F. McGuire, of Cedar Rapids, for appellees.

SNELL, J.—This is an action for declaratory judgment and judicial construction of chapter 312 of the 1962 Code of Iowa, and more specifically section 312.6 thereof. Plaintiffs' action is predicated upon the contention that the statute does not permit the expenditure of municipal road use tax funds for surveys, studies and the selection of routes for proposed roads.

From an adverse ruling and interpretation of the statute the plaintiffs appeal.

Plaintiffs are resident taxpayers of Cedar Rapids and bring this action on behalf of themselves and all other taxpayers.

Defendants are the City, a municipal corporation, and officials thereof.

The City of Cedar Rapids proposes the building of a 45-million-dollar expressway for approximately 13 miles through the city. The project contemplates the latest of approved developments in highway construction with four lanes, median strip and controlled access. A consulting engineering firm specializing in such projects throughout the United States was retained to perform engineering services in connection with the development. A written contract outlined the services to be performed and the fees therefor.

The contract provided:

"WHEREAS, the City proposes a highway improvement project, hereinafter named the 'Project,' and which is described as follows:

"A proposed controlled access highway from a terminal on U. S. 218 in the vicinity of the southern City Limits to a crossing of the Cedar River via A Avenue and continuing to a terminal in the vicinity of U. S. 150 at the northern City Limits; * * *

"The Engineers' services shall be divided into two separate phases; Phase 1—Preparation of a Corridor Report establishing the general location of the Project through the City and interchange studies near the Central Business District; and Phase 2 —Preparation of a detailed engineering report and preliminary design of the Project, said Phase 2 not to be performed unless

written notice requesting its performance be first given by City to Engineers."

The contract makes more detailed provisions with reference to Phase 1 and Phase 2. Phase 1 includes among other specifications, traffic data, soils, reconnaissance of the tentative route, preliminary estimate of right-of-way and construction costs for the Project. Phase 2 includes among other specifications, contour maps and surveys for the Project, design criteria, preliminary layout and profile of entire Project, preparation of general schematic drainage plan, assembling information relative to property lines and owners of record, estimates of construction quantities and costs for the Project.

The contract provides that the City is to pay the engineers for the performance of said contract as follows:

"Phase 1—A lump sum amount of $21,800.

"Phase 2—A lump sum amount of $90,400."

The contract further provided that the fees for each phase will be due and payable upon completion and acceptance by the City with a further provision for equitable fee for work done in event the Project was abandoned.

The engineers were consulting engineers contracting with the City for their services. They were not city employees. The engineering firm in accordance with the contract prepared a "Corridor Report" showing the proposed route, traffic analysis, soils and geology data, estimate of the cost of the Project and other matters pertaining thereto. There has been no actual physical construction work performed on this Project and no contracts have been let for such work. There has been no definite commitment for the location and construction of this particular road or any other similar road.

There were no questions raised as to the competency of the engineers, that the contract price was excessive for the work done or required to be done thereunder, or that such information was unnecessary before a highway could be built.

In December 1963 the City established a fund known as "Cedar Valley Roadway Fund." There has been transferred to this fund from the City's allocation of the road use tax fund $40,000 in December 1963 and $100,000 in May 1964.

The engineering firm completed Phase 1 of the contract and started work on Phase 2. From the funds transferred from the road use tax fund to Cedar Valley Roadway Fund the engineers have been paid $21,925. It is the use of this money for this purpose and also for Phase 2 of the contract that is challenged in this action.

I. Chapter 235, Laws of the Sixtieth General Assembly, attempted the grant of broad power to cities and towns. It provided in part: ·

"It is hereby declared to be the policy of the state of Iowa that the provisions of the Code relating to the powers, privileges, and immunities of cities and towns are intended to confer broad powers of self-determination as to strictly local and internal affairs upon such municipal corporations and should be liberally construed in favor of such corporations. The rule that cities and towns have only those powers expressly conferred by statute has no application to this Code. * * *."

In Richardson v. City of Jefferson, 257 Iowa 709, 134 N.W. 2d 528, we said that as a rule of construction this Act was not unconstitutional.

In construing the statute involved in the case at bar we proceed as did the trial court from the premise of the legislative mandate. The rule expressio unius est exclusio alterius is not applicable.

II. Chapter 312, Code of 1962, creates in the state treasury a road use tax fund. This fund includes proceeds from various motor vehicle taxes and other state revenues.

Section 312.2 directs the allocation of the road use tax fund by the treasurer of state including an allotment to the street construction fund of cities and towns. Section 312.3 provides the method of apportionment among cities and towns. Section 312.6 as it appears in the 1962 Code is as follows:

"Funds received by municipal corporations from the road use tax fund shall be used solely for the construction, reconstruction, repair, and maintenance of roads and streets, and for the construction of storm sewers and other drains necessary to control and provide adequate drainage for surface waters originating within or flowing upon the right of ways of newly con-

structed or reconstructed roads or streets within municipal corporations. Such funds shall not be used for the purchase of machinery or equipment, except as provided in subsection 12 of section 404.7."

These sections of the Code have been amended by Laws of the Sixty-first General Assembly, but the problem before us must be resolved under the law before these amendments.

Chapter 187, Laws of the Sixtieth General Assembly, repealed section 312.11, Code of 1962, and enacted a substitute. The law provides for budgeting and accounting and directs, subject to an exception not material here, the expenditure of at least seventy-five percent of the road use tax fund of the City on the arterial streets.

Plaintiffs contend that the provisions of section 312.6, quoted supra, are not sufficiently broad to permit the use of road use tax money to pay for the services rendered under the engineering contract. Plaintiffs claim that the services are not sufficiently related to "construction."

III. In Edge v. Brice, 253 Iowa 710, 113 N.W.2d 755, we considered the meaning of the term "construction" used in a constitutional amendment.

Article Seven of the Constitution of the State of Iowa as amended by section eight thereof (1942 antidiversion amendment) provides:

"Motor vehicle fees and taxes. 'All motor vehicle registration fees and all licenses and excise taxes on motor vehicle fuel, except cost of administration, shall be used exclusively for the construction, maintenance, and supervision of the public highways exclusively within the state or for the payment of bonds issued or to be issued for the construction of such public highways and the payment of interest on such bonds.' "

Chapter 306A, Code of 1962, provides that incident to controlled-access highways the cost of relocating utility facilities may be paid by the state from the primary road fund.

In the Edge case we considered the question "Is the relocation of utility facilities a part of the construction of a public highway as the word 'construction' is used in the antidiversion amendment?" (Loc. cit. 715 of 253 Iowa) We found it necessary

to determine the scope of "construction" of public highways. (Loc. cit. 717) We said: "It is fair to say the intent of the term 'construction' as used in the amendment includes all things necessary to the completed accomplishment of a highway for all uses properly a part thereof." (Loc. cit. 719)

The word "construction" now under attack is the same as previously considered. We see no reason for now restricting its meaning. We do not think including the word "establishment" immediately preceding the word "construction" in section 310.4, Code of 1962, relating to farm-to-market roads, or the 1965 amendment to section 312.6 (chapter 265, Laws of the Sixty-first General Assembly) making the money available for the same purposes as the municipal street fund, indicates any legislative intent contrary to our pronouncement.

IV. Plaintiffs-appellants rely on State ex rel. St. Louis County v. State Highway Commission, 315 Mo. 707, 711, 286 S.W. 1, 2, a Missouri case decided in 1926. This case was an original proceeding in mandamus to require the highway commission in construction of "refund roads" to follow a route designated by the county court of St. Louis County. The question was actually the determination of the conflict of authority in selection. The court said:

"But 'construct' means to put together the constituent parts of something in their proper place and order. * * * The power given to construct the roads cannot therefore be held to include the power to select or designate their routes."

The narrow point decided was who had the power to locate a road.

In the light of our own definition and later pronouncements in other jurisdictions we do not think this case controlling in the case at bar.

V. Lawhorn v. Johnson, 196 Ark. 991, 994, 120 S.W.2d 720, 721, a 1938 Arkansas case, involved the use of road funds to pay part of the salary of a county judge acting as ex officio road commissioner.

The court considered a statute providing that the fund shall be used for making and repairing public roads. The right to use the money for the salary was challenged. The court said:

"It would appear that supervision is as much a necessary expense in the building of roads as the driving of a grader, or the use of a plow or other instrumentality." The court held that the services of the ex officio road commissioner did enter into the " 'making and repairing public roads and bridges.' "

VI. Johnson v. Robinson, 238 Ala. 568, 574, 192 So. 412, 416, a 1939 Alabama case, involved the payment of administrative expense from a road fund. The court said:

"The services of such administrative personnel are as essential to the general scheme of constructing, maintaining and supervising public roads and bridges as is the material that goes into the work or the labor and machinery that applies it."

VII. Calhoun County, Florida v. Roberts, 136 F.2d 59, U. S. Circuit Court of Appeals, 5 Cir., decided in 1943, involved a claim for engineering services in construction of a bridge. This included preparation of plans. The court said at page 63: "Engineering services are an integral and necessary part of the cost of the construction of a bridge of such magnitude. It was necessary to have plans, specifications, estimates, and engineering supervision, etc., in order to build such a bridge and approaches."

VIII. The problem in the case at bar does not involve the question as to what body should designate the route for the proposed highway as in the Missouri case, Division IV, supra. Here the engineering contract called for, but was not limited to, the compiling of necessary data for recommending a route to be selected by the city council. The services to be performed included a large amount of engineering work admittedly necessary to the proposed Project. The fact that surveys and estimates incident to location are the first step does not mean that the costs thereof are not a part of construction costs or that such services are not within the meaning of the word "construction." It is too obvious to need discussion that neither final plans nor specifications can be prepared nor work on the structures begun until location has been determined and the work of Phase 1 and Phase 2 has been completed.

We conclude that section 312.6, Code of 1962, does not bar the use of road use tax funds in payment of the engineering

services called for by the City's contract. The use of the funds is not outside the purview of the statute.

The case is—Affirmed.

All JUSTICES concur.