**WEBSTER REALTY COMPANY,**
Appellant,

v.

**CITY OF FORT DODGE, Iowa, Appellee.**

No. 53872.

Supreme Court of Iowa.

Feb. 10, 1970.

Bastian, Beisser & Carlson, Fort Dodge, for appellant.

Donald J. Mitchell, Fort Dodge, and Herrick, Langdon, Belin & Harris, Des Moines, for appellee.

LeGRAND, Justice.

This is a declaratory judgment action brought by plaintiff, an Iowa corporation with its principal place of business in Fort Dodge, to test the validity of proceedings under which the City of Fort Dodge proposes to issue $500,000.00 in general obligation urban renewal bonds as authorized by chapter 403, Code of Iowa, 1966. The suit was brought in equity, and our review is de novo.

Chapter 403 was enacted in 1957 and is popularly known as the Urban Renewal Law. Under its provisions municipalities are given broad powers to "eliminate slums and prevent the development or spread of slums and urban blight and to encourage needed urban rehabilitation." Section 403.3, Code of Iowa.

The facts are not in dispute. Acting pursuant to chapter 403, the City Plan Commission of Fort Dodge approved an urban renewal plan described in the record as the Riverfront Project. We shall so refer to it here. The plan was then presented to the city council. Thereafter the city council set a time and place for public hearing, which was held on November 26, 1968, and which was attended and participated in both by those who supported and those who opposed the plan.

Following the public hearing, the city council adopted a resolution which included a finding that the area covered by the Riverfront Project is "a blighted, decadent area, and qualifies as an eligible project area under chapter 403, Code of Iowa, 1966."

The total cost of the project is estimated at $2,000,000.00. The Department of Housing and Urban Development of the Federal government tentatively committed itself to furnish three fourths of this amount. The city proposes to issue its general obligation bonds in the amount of $500,000.00 to provide the balance of the required amount.

On January 9, 1969, the city council passed a resolution fixing January 28, 1969, as the time for a meeting at which proceedings would be instituted for the issuance of these bonds under section 403.12 (5), Code of Iowa. Prior to the date fixed for that meeting, a petition was filed by the required number of electors asking that the city submit the issuance of these bonds to the legal voters at a special election as provided in chapter 408A, Code of Iowa. The election was held and the proposal passed by more than the necessary 60 percent of all those casting votes.

The city council then passed a resolution providing for the issuance of $500,-000.00 general obligation urban renewal bonds. The resolution, among other things, ordered that there be levied on all taxable property within the city a direct annual tax for each of the years while said bonds or any of them are outstanding, in amounts sufficient to pay the principal and interest thereon.

It is the issuance of these bonds which plaintiff seeks to prevent. Plaintiff prays for a decree holding that "the statute and laws under which the city council purported to act, are unconstitutional, illegal and void, and that any general obligation urban renewal bonds issued * * * pursuant to the acts of the city council would be illegal and void, and further prays for a permanent injunction restraining the defendant from issuing and selling its $500,000.00 general obligation urban renewal bonds." The trial court found against plaintiff and held the bonds to be issued pursuant to the proceedings in question would be valid general obligation bonds of the City of Fort Dodge. Plaintiff appeals and we affirm.

Plaintiff urges numerous grounds for reversal. Some attack the constitutionality of chapter 403, both generally and as to particular sections; others challenge the propriety and sufficiency of the manner in which the city attempted to carry out the authority granted under chapter 403.

We have considered all of the objections urged by plaintiff, although we do not discuss each in detail. Neither do we treat them in the same order as listed by plaintiff in its brief and argument. We find nothing in any of the propositions which would warrant a reversal.

■ I. Plaintiff argues chapter 403 is unconstitutional because (1) it grants certain citizens privileges or immunities not granted equally to all in violation of Article I, section 6, Constitution of Iowa; (2) it deprives plaintiff of its property without due process of law and without equal or proportionate participation in the benefits of tax expenditures in violation of Article I, section 9, Constitution of Iowa; and, (3) it appropriates funds and levies taxes for private purposes in violation of Article III, section 31, Constitution of Iowa.

None of these complaints against urban renewal laws is new. However, such legislation has been almost universally upheld against these attacks. See annotation in 44 A.L.R.2d, page 1414, for compilation of cases dealing with this subject.

■ Basic to these objections is the argument that urban renewal serves no legitimate public purpose, and that it serves only the interest of the few who live within the project area at the expense of the many who must pay taxes to finance any rehabilitative effort. This argument was long ago discredited, and the question is no longer an open one. 40 Am.Jur.2d, Housing Laws and Urban Redevelopment sections 1, 2, and 3, pages 1060–1063; R & R Welding Supply Company v. City of Des Moines, 256 Iowa 973, 977, 129 N.W.2d 666, 669; Annotations, 44 A.L.R.2d 1414, 1420.

Nor does the fact that one class may benefit incidentally more than another destroy the public character of urban renewal or make it vulnerable to the attack that it is a special privilege law. Any legislation which provides for public improvement

benefits some to a greater degree than others. We have several times held this raises no constitutional barriers.

In Dickinson v. Porter, 240 Iowa 393, 416, 35 N.W.2d 66, 80, we said, "A law may serve the public interest although it benefits certain individuals or classes more than others. (citations)" See also Graham v. Worthington, 259 Iowa 845, 858, 146 N.W.2d 626, 635, and citations.

We must also disagree with plaintiff that it is deprived of its property without due process of law simply because it claims to receive no direct benefit from this urban renewal project. Graham v. Worthington, supra, 259 Iowa at page 864–865, 146 N.W.2d at page 639.

We find no merit in the propositions urged in this division.

II. Plaintiff next claims chapter 403 is so vague and indefinite as to render it unconstitutional and impossible of enforcement. It particularly levels that charge at section 403.12.

The principal claim concerns subsection five of section 403.12, which authorizes the issuance of general obligation bonds. Plaintiff argues that when considered along with section 403.9 authorizing the issuance of revenue bonds it is impossible to ascertain the real legislative intent. We find no conflict between these two sections, nor in any other provision of the chapter. It seems apparent the legislature intended to permit urban renewal to be financed either by revenue bonds, by general obligation bonds, or by a combination of both. Section 403.12(5) specifically authorizes the issuance of general obligation bonds "in addition to any authority to issue bonds pursuant to section 403.9."

One who claims the invalidity of a statute because it is vague and indefinite must make a clear showing to that effect and must show the courts cannot determine the legislative intent with a reasonable degree of certainty by accepted rules of construction. Plaintiff has utterly failed to do this. Graham v. Worthington, 259 Iowa 845, 851, 146 N.W.2d 626, 631; Lee Enterprises, Inc. v. Iowa State Tax Commission, Iowa, 162 N.W.2d 730, 738, 739, and citations.

III. Plaintiff also asserts the urban renewal law is unconstitutional because it delegates legislative authority to the municipality in contravention of Article III, section 1, Constitution of Iowa. Plaintiff singles out section 403.14 as being particularly vulnerable to this charge.

Although we have met this problem as presented and argued by plaintiff, we point out our recent decision in Koelling v. Board of Trustees, 259 Iowa 1185, 1190–1193, 146 N.W.2d 284, 287–289, supports the general rule that delegation of legislative power to municipal corporations to govern matters which are *local in scope* is not within the constitutional prohibition. But in any event we find no such delegation of authority as offends against Article III, section 1, of our Constitution. See Graham v. Worthington, supra, 259 Iowa at page 857, 146 N.W.2d at 634; State v. Rivera, 260 Iowa 320, 323, 149 N.W.2d 127, 131; Elk Run Telephone Company v. General Telephone Company, Iowa, 160 N.W.2d 311, 315. Here the legislature has given municipalities broad powers to effect the purposes of the urban renewal law, but it has also carefully spelled out the general policy under which that is to be done. The city is required to adopt a program and the legislature has specified what that may include (section 403.3). The powers which the municipality may exercise are itemized at section 403.6. A detailed program for the issuance of bonds is set out at section 403.9. Additional provisions describing generally the extent to which the city may exercise its authority are catalogued at sections 403.8, 403.12, 403.14 and 403.15.

We agree with the many jurisdictions which, under similar circumstances, have held such delegation of authority to be un-

objectionable. See Re-development Commission of Greensboro v. Security National Bank, 252 N.C. 595, 114 S.E.2d 688, 698; Wilson v. City of Long Branch, 27 N.J. 360, 142 A.2d 837, 847; Alanel Corp. v. Indianapolis Redevelopment Commission, 239 Ind. 35, 154 N.E.2d 515, 520; People ex rel. Adamowski v. Chicago Land Clearance Commission, 14 Ill.2d 74, 150 N.E.2d 792, 796; Miller v. City of Louisville, Ky., 321 S.W.2d 237, 240. We find no improper delegation of authority here.

IV. Plaintiff next says chapter 403 is unconstitutional because it offends against Article VII, section 7, Constitution of Iowa, which provides as follows:

"Every law which imposes * * * a tax, shall distinctly state the tax, and the object to which it is to be applied; and it shall not be sufficient to refer to any other law to fix such tax or object."

Plaintiff's complaint is that section 403.-12(5) depends upon other code chapters to determine the tax which shall be levied to pay off the bond indebtedness incurred under this chapter.

The section in question authorizes the issuance of general obligation bonds and provides that such bonds shall be "issued in the manner and within the limitations prescribed by the laws of this state for the issuance and authorization of bonds by such municipality for public purposes generally."

Under familiar rules of statutory construction we must, of course, consider all portions of a law together without giving undue importance to any single or isolated portion. Wilson v. Iowa City, Iowa, 165 N.W.2d 813, 822. Section 403.6(8) specifically authorizes the municipality to levy taxes and assessments for the purposes of carrying out the urban renewal law. Section 403.14, subd. 2(g) also authorizes the levy of taxes and assessments.

When considered together these provisions meet the requirements of the consti-

tutional provision above set out. The fact that the section under which the bonds are authorized cautions that they must be issued in accordance with the limitations placed on the issuance of bonds generally does not invalidate them. We believe that Knorr v. Beardsley, 240 Iowa 828, 859, 38 N.W.2d 236, 254, supports this conclusion.

The proposition urged by plaintiff in this division is without merit.

V. We cannot agree either with plaintiff's reliance on Article III, section 29, Constitution of Iowa, to justify a reversal. This is the provision requiring that every legislative act shall embrace but one subject and matters properly connected with it, and directs further that the subject shall be expressed in the title.

The title to the urban renewal act (chapter 197, Laws of the Fifty-seventh General Assembly) is as follows: "An Act to Provide for the Rehabilitation, Clearance, and Redevelopment of Slums and Blighted Areas in Cities and Towns."

We have long been committed to the principle that this constitutional requirement should be given liberal construction to permit one act to embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto. Chapter 403 deals exclusively with planning, achieving, and financing urban renewal. We find no violation of this constitutional provision here. Lee Enterprises, Inc. v. Iowa State Tax Commission, Iowa, 162 N.W.2d 730, 737, and citations.

VI. There remain for determination several objections criticizing the manner in which defendant exercised the authority conferred by chapter 403.

The first of these is the cry that defendant failed to comply with sections 403.4 and 403.5, which are said to set out conditions precedent to the right to adopt an urban renewal plan.

Section 403.4 provides:

"No municipality shall exercise the authority herein conferred upon municipalities by this chapter until after its local governing body shall have adopted a resolution finding that:

"1. One or more slum or blighted areas exist in such municipality.

"2. The rehabilitation, conservation, redevelopment, or a combination thereof, of such area or areas is necessary in the interest of the public health, safety, morals or welfare of the residents of such municipality."

Section 403.5(1) contains a related restrictive clause forbidding the approval of an urban renewal project "unless the governing body has, by resolution, determined such [urban renewal] area to be a slum area or a blighted area or a combination thereof, and designated such area as appropriate for an urban renewal project."

We agree the terms of section 403.4 and 403.5(1) must be substantially followed if a municipality elects to act under the urban renewal law. We said as much, at least with reference to section 403.4, in Wilson v. Iowa City, Iowa, 165 N.W.2d 813, 816.

Plaintiff's sole objection is that defendant adopted the resolutions and made the required findings in the same resolution as that which approved and adopted the urban renewal project itself. Plaintiff argues the determinations under sections 403.4 and 403.5(1) must *precede* approval of the project and that the one cannot be settled simultaneously with the other.

No authority is cited for this view, and we believe it unreasonably limits the meaning of the statute. We find no justification for the contention that these provisions must be complied with at a *prior* time and by a *separate* resolution. According the statute a sensible and logical construction, as we are obliged to do

under Janson v. Fulton, Iowa, 162 N.W.2d 438, 443, and taking into account the objects and purposes of the chapter as a whole, which we are also bound to do under Wilson v. Iowa City, supra, 165 N.W.2d at page 822, we hold the procedure followed here substantially followed the statutory mandate and clearly accomplished the purpose and intent of those sections.

VII. Plaintiff next attacks the validity of the bonds proposed to be issued under the authority of section 403.12(5) because the defendant did not first issue revenue bonds under section 403.9. Plaintiff insists the wording of section 403.12(5) necessarily restricts the use of general obligation bonds to those situations in which revenue bonds are found inadequate to entirely finance a project. Not until then, according to plaintiff, may general obligation bonds be resorted to as an "aid" or "supplement" to the revenue bonds.

Again no authority for this view is presented. We have already indicated in Division II that we believe chapter 403 authorizes urban renewal projects to be financed by revenue bonds under 403.9, by general obligation bonds under section 403.12(5) or by a combination of both.

We reject plaintiff's argument on this score. What we said about statutory construction in Division VI is equally applicable here. We hold defendant may elect to issue general obligation bonds under section 403.12(5) without having first provided for revenue bonds under section 403.9.

VIII. Plaintiff also objects to the notice given by defendant, both for the public hearing on the adoption of the urban renewal plan and for the special election to authorize the issuance of general obligation bonds. Some of the complaints urged on the trial court are not presented here, and we deem them to have been waived. Again plaintiff cites us no authority for its position.

■ Plaintiff says first that defendant in giving notice of public hearing under section 403.5(3) failed to include a description of the alternative methods of financing or "the financial implications of each method." In other words the notice did not spell out the bond provisions of sections 403.9 and 403.12(5). We find the notice as given contained adequate details concerning "the time, date, place and purpose of the hearing, generally [identified] the urban renewal area covered by the plan, and * * * [outlined] the general scope of the urban renewal project under consideration." This is all the statute demands, and the notice as given was sufficient.

■ A related issue is raised by plaintiff's complaint against the notice given at the time of the election held under chapter 408A, Code of Iowa.

As provided therein, various electors petitioned the city to submit the question of issuing the bonds here under attack to a vote of the people. The procedure for such an election is governed by chapter 408A, Code. Plaintiff again presses us to adopt the unsupported view that notice of such an election must include information concerning *alternative* methods of financing—methods which the city does *not* propose to use. Section 408A.4 does not prescribe that such information be included in the notice. We cannot write such a provision into the statute.

As to the notice of hearing under section 403.5(3) and also as to the notice of election under section 408A.4, we hold defendant fully and literally followed the statutory requirements. There is no merit to the contention such notices were invalid.

■ IX. We can dispose of plaintiff's next objection in short order. It is claimed section 403.10, Code, must be followed before bonds issued under 403.12(5) are valid.

Section 403.10 is limited by its express terms to the purchase of urban renewal bonds by fiduciaries. It lays down certain conditions to be met before such bonds may be used for investment of fiduciary funds. They relate principally to the existence of financing agreements with the federal government.

Assuming, arguendo, that such conditions are not shown to have been met, this would not affect the validity of the bonds; it would only prohibit fiduciaries from buying them.

We find no merit in this argument.

X. There remains one final argument which necessitates some discussion.

The undisputed evidence shows that the issuance of $500,000.00 in general obligation bonds, as here contemplated, will raise the defendant's outstanding indebtedness to more than $1\frac{1}{4}$ percent of the actual value of the taxable property within the municipality. It is claimed this violates section 407.1, Code of Iowa.

Defendant asserts the limitation of this section is not applicable.

In addition to section 407.1 which limits indebtedness for general and ordinary purposes, municipal debt limitation is also treated in section 407.2, which provides municipal indebtedness for *any* purpose may not exceed five percent of the actual value of the property within the municipality. This is merely a statutory declaration of the restriction in Article XI, section 3, Constitution of Iowa.

It is conceded that if section 407.1 is controlling the bonds are forbidden; if section 407.2 governs, then they are valid.

We must decide if the authority granted municipalities under the urban renewal law is within the purview of section 407.1. In other words does the term "general and ordinary purposes" as used in the statute embrace urban renewal?

Urban renewal laws are extraordinary in policy and purpose. They aim to relieve pressing and urgent municipal evils, which are clearly stated in section 403.2 of the act and are referred to in Wilson v. Iowa City, supra, at page 816 of 165 N.W.2d, where we also said (at page 823) that chapter 403 grants new and unusual · powers and permits sweeping and drastic municipal innovations.

■ The underlying policy of urban renewal laws, the purposes stated in chapter 403, the specific and far-reaching authority granted therein—all belie any legislative intent to confine the financing of urban renewal projects within the limits of section 407.1. Or, to put it another way, we hold indebtedness incurred for urban renewal under the specific statutory authorization of chapter 403 is not incurred for general and ordinary municipal purposes.

We believe there is ample authority for this view. In France v. City of Des Moines, 183 Iowa 1311, 1317, 168 N.W. 208, 210, we said a statute permitting construction of a bridge carried with it the power to incur indebtedness for that purpose beyond the limitations of what is now section 407.1, even though the authorizing statute did not directly say so.

This was shortly after the legislature had made the 1¼ percent limitation applicable only to indebtedness for general and ordinary purposes, and we said, "The tendency of the legislature to confer power upon cities to provide necessary public improvements is further emphasized by the provisions * * * amending [what is now section 407.1] to make the 1¼ percentum limitation apply only to indebtedness incurred 'for its general and ordinary purposes.'" See also 1930 Opinions of the Attorney General, at page 181.

The legislative intent is further evidenced by section 403.18, which provides in part:

" * * * The powers conferred by this chapter shall be in addition and supplemental to the powers conferred by any other law."

We believe, too, that the amendment to section 368.2, Code of Iowa, enacted in 1963 as chapter 235 of the Laws ˙of the Sixtieth General Assembly is helpful to defendant. This amendment commands us to give liberal construction to the powers granted municipalities and we have said the Dillon Rule of strict construction no longer has application to statutes pertaining to local and internal affairs. We have discussed this matter several times and need not do so again here. See Richardson v. City of Jefferson, 257 Iowa 709, 715, 134 N.W.2d 528, 532; Slapnicka v. City of Cedar Rapids, 258 Iowa 382, 385, 139 N.W. 2d 179, 181; and Iowa City v. Muscatine Development Co., 258 Iowa 1024, 1035, 141 N.W.2d 585, 592.

Under these circumstances we find the specific authority conferred by the urban renewal law, which includes the right to issue general obligation bonds under conditions and in the manner there prescribed, does not fall within the restrictions of section 407.1.

Needless to say, of course, urban renewal indebtedness under chapter 403, together with all other municipal obligations, must meet the constitutional requirements of Article XI, section 3, Constitution of Iowa, and the statutory limitations of section 407.2, Code of Iowa.

XI. We have carefully examined all of the propositions urged for reversal. We find no merit in them. The judgment and decree of the trial court is accordingly affirmed.

Affirmed.

All Justices concur, except REES, J., who takes no part.