Dear Mr. Lafser:
In your opinion request you pose the following question:
 Can the Missouri Clean Water Commission (CWC) legally award a 15% state grant from the Water Pollution Control Fund to supplement a federal grant to the Metropolitan St. Louis Sewer District (MSD) for the purpose of establishing a minority business enterprise (MBE) program pursuant to the attached Environmental Protection Agency (EPA) policy?
Your request further states that the United States Environmental Protection Agency (EPA) published a final policy on December 26, 1978, "Policy for Increased use of Minority Consultants and Construction Contractors," and states that the policy applies to all grants under Section 201 of the Federal Water Pollution Control Act, 33 U.S.C. § 1281.
Your request characterizes this EPA policy as one requiring all grantees of funds under § 201 to encourage and assist Minority Business Enterprise (MBE) to seek grants or contracts through the grants program, and further that the Metropolitan St. Louis Sewer District (MSD) has proposed an MBE program to insure that MSD will comply with the EPA policy on MBE, which will in turn ensure continuation of MSD projects without substantial delays.
The MSD submitted a proposed contract to DNR on February 5, 1979, to employ a consultant to perform an MBE program for MSD, which requested state and federal grants of $15,000 and $75,000 respectively. Section V(c) of the EPA "Grants for the Construction of Treatment Works, Policy for Increased Use of Minority Consultants and Construction Contractors," Federal Register, Vol. 43, No. 248, December 26, 1978, states that: "The grantee in its role as a public trustee assumes primary responsibility to achieve an acceptable level of MBE use. This primary responsibility is a basic condition of its grant award."
The EPA, in a letter dated July 24, 1979, signed by Allan S. Abramson, Director, Water Division of Region VII, stated that consultant contracts, such as the contract involved in your request, to assist minority business enterprise participation in construction grant programs are eligible for federal grant funds under § 201. You state that the Clean Water Commission (CWC) approved the $15,000 state grant conditioned upon a favorable ruling by this office.
The question addressed in your request form, which related to the determination of eligibility by EPA, concerns the $15,000 grant of state funds. The EPA directives and materials included with the request form address the legality of the program under federal laws, and the duties and obligations of various entities, e.g., grant recipients, contractors, consultants, etc., and not the State of Missouri.
There is not a wealth of Missouri law or authority answering this question and it appears the answer must come primarily from analyses of the Missouri statutes and cases of other jurisdictions. There appears to be no Missouri case law directly on point.
In Art. III, § 37(b), of the Constitution of the State of Missouri, the voters of the State of Missouri authorized the sale of bonds for water pollution control to carry on a program forplanning, financing and constructing sewage treatment facilities determined by the legislature. The program was to be performed by the Water Pollution Board (now the CWC).
The legislature in the Missouri Clean Water Law, found in Chapter 204, RSMo, directed the CWC to administer state and federal grants to municipalities and political subdivisions for the planning and construction of treatment works and set forth guidelines for such administration in other sections. Section204.026(10), RSMo 1978.
In Section 204.101, the state is authorized to make grants to political subdivisions to assist them in the construction of:
 . . . those portions of water pollution control projects which qualify for federal aid and assistance under the provisions of the Federal Water Pollution Control Act, . . . (Emphasis added.)
This provides that any portion of a project and all activities that qualify under the federal law will likewise be eligible for grant funds under the Missouri statute. And, in Section 204.106, the legislature has determined that state funds may be provided to:
 . . . pay a portion of the construction costs of such projects or portions of projects which qualify for and in conjunction with federal grants as may be received under the provisions of the Federal Water Pollution Control Act, as amended. (Emphasis added.)
This section again indicates that projects and portions thereof which qualify for federal grants will be eligible for state grant funds. In Section 204.111, the legislature closely linked the use of state funds with federal funds:
 The commission is the agency for the administration of such funds as are granted by the state for this program. The administration of the granted funds shall be done in direct conjunction with the administration of federal funds granted for water pollution control projects under the provisions of the Federal Water Pollution Control Act, as amended. (Emphasis added.)
Further indication that the legislature intended to link eligibility of state funds to eligibility under federal funding is found in Section 204.116, wherein the legislature directed that:
 The commission's determination of the relative need, the priority of projects, and the standards of construction shall be consistent with the provisions of the Federal Water Pollution Control Act, . . . (Emphasis added.)
And, in Section 204.026(15), the commission is authorized to:
 Exercise all incidental powers necessary to carry out the purposes of [the Missouri Clean Water Act], to assure that the state of Missouri complies with any federal water pollution control act, retains maximum control thereunder and receives all desired federal grants, aid and benefits; . . . (Emphasis added.)
It therefore appears that where grant funds which are related to sewage control facilities are concerned, the constitution has required the legislature to determine the program for the application of these funds. And the legislature has determined that the application of and eligibility for state grants should closely coordinate with federally approved projects so that ". . . administration of the granted funds shall be done in direct conjunction with the administration of federal funds granted for water pollution control projects. . . ." (Section 204.111 and above cited sections.)
The U.S. EPA has determined the proposed MBE grant is eligible. We believe that the legislature intended by the above statutory provisions to make eligible for grants from state funds any project cost which is eligible for grants under the Federal Water Pollution Control Act and is reasonably related to the treatment facility construction project process.
An examination of cases from Missouri and other jurisdictions support this result. The word "construction" indicates that it is a word of variable meaning which should be construed according to the intent of the provisions in which it may be found. Larson v.Crescent Planning Mill Co., 218 S.W.2d 814, 820 (Mo.App., St. L. 1949).
The United States Supreme Court in United States v. WilliamCramp and Sons Ship and Engine Building Co., 206 U.S. 118,27 S.Ct. 676, 678, 51 L.Ed. 983 (1907), refused to employ a narrow definition of the word "construction" which would have rendered valid additional claims submitted by the ship building company after completion of the ship. The claims were barred by application of a broad definition of the term construction in a release signed by the company. The court interpreted a release employing the word "construction" to include not only those claims arising under construction but also those which arose "by virtue of construction." Thus, the context here also was a factor in the broader definition of the word "construction."
The Idaho Supreme Court in Ostrander v. City of Salmon,117 P. 692 (Idaho S.Ct. 1911), stated that the word "construction" should be broadly construed to imply authority to permit purchase of works which had already been constructed, where this served the purpose of the legislation in question. There, it was a question of whether waterworks could be purchased which had already been constructed, the court ruling in the affirmative. The court reasoned that this construction permitted the intent of the legislature to be accomplished, viz, providing adequate treatment of water supplies.
The Massachusetts Supreme Court in Plymouth Co. NuclearInformation Committee, Inc. v. Energy Facilities Siting Council,372 N.E.2d 229, 231 (Mass. 1978), broadly construed "construction" to refer back in time when obligations to purchase facilities for the plant were first made in the amount of $34,727,563 on a total project estimate of $1,396,000,000, even though no site preparation work had yet taken place.
The Arkansas Supreme Court in Hollis v. Erwin, 374 S.W.2d 828,833 (Ark. 1964), construed the word "construction" to also include the equipping of a hospital as part of a "single enterprise." The court recognized that a hospital is more than a mere building with four walls and a roof, and thus it was necessary to determine that equipment would be required in the construction process of this "single enterprise" to achieve the purposes of amendments to the Arkansas Constitution. Sewage works projects and all reasonable activities related are a single enterprise, which it may be said the legislature sought to encourage, and this opinion supports a theory that the word "construction" should be broadly construed to accomplish the intent of a law making body.
The Supreme Court of Washington in Seymore v. City of Tacoma,32 P. 1077, 1080 (Wash. 1893), adopted an implied authority concept to find that more than the mere cost of construction in a narrow sense was to be implied by the use of that word.
The Court of Appeals for the Fifth Circuit, in Dobbs v.Costle, 559 F.2d 946, 948 (5th Cir. 1977), construed the word "construction" to go back to early steps such as preparing plans and specifications, doing soil testing and exploratory boring for a sewage treatment plant. This broad interpretation of the word "construction" permitted the city to apply for a 55% federal grant fund because its construction had begun before July 1, 1972, when these activities were included under the concept of construction.
A like theory was applied by the Iowa Supreme Court inSlapnicka v. City of Cedar Rapids, 139 N.W.2d 179, 182 (Iowa 1965), to permit the City of Cedar Rapids to apply funds which by statutory direction were to be used only for the "construction" of roads and streets, to pay for preliminary engineering services in contemplation of building an expressway, against the contention that such services were not sufficiently related to construction. The Court stated:
 `It is fair to say the intent of the term "construction" as used in the [constitutional] amendment includes all things necessary to the completed accomplishment of a highway for all uses properly a part thereof.' [Citation omitted.]
Thus, considering what must have been the legislative intent to do all things necessary to accomplish the completion of sewage treatment works projects, it is fair to say that this intent would include all of those services necessarily related to construction as construed by EPA in the instant situation. It appears that the consulting services to ensure efficient employment of minority business enterprises would be reasonably related to the construction project. The EPA has determined that the MBE program is grant eligible. And, further, the legislature in the cited provisions, indicated its intent to link the application of state construction grant funds to the eligibility of a project for funding under federal statutes. Hence, it is the view of this office that the Missouri Clean Water Commission may award a 15% state grant to the Metropolitan St. Louis Sewer District to establish an effective minority business enterprise program.
Very truly yours,
 JOHN ASHCROFT Attorney General