JOHN R. PRIME, Adjutant General, v. C. G. McCARTHY, Auditor of State, Appellant.

**Paying National Guard:** POWERS OF EXECUTIVE COUNCIL. A county is liable for the expenses of troops, only, when such troops are furnished by a command within the county, upon the order of its sheriff.

SAME. The *subsistence* of troops called out by the governor to prevent or suppress breaches of the peace is not to be paid out of the appropriation made by chapter 74, Acts of the Eighteenth General Assembly, and acts amendatory, which give the governor power to call out troops in cases of insurrection or breach of the peace, etc.

SAME. Such subsistence is payable under that clause of Code, 120, as amended, which authorizes the executive council to provide all things necessary to enable state officers to promptly and efficiently fulfill the duties of their several offices, including repairs and "such other necessary and lawful expenses as are not otherwise provided for," and to audit and certify claims created by the exercise of such power.

**Same: Constitutional Law.** Such auditing and certifying is an appropriation within the constitutional provision that "no money shall be drawn from the treasury, but in consequence of appropriations made by law," and it is the duty of the auditor upon such certification to draw his warrant for the sum certified, and that of the treasurer to pay the same out of funds not otherwise appropriated.

*Appeal from Polk District Court.*—HON. W. A. SPURRIER, Judge.

FRIDAY, DECEMBER 14, 1894.

ACTION of *mandamus* for an order commanding the defendant, as auditor of state, to issue his warrants

upon the state treasury for the payment of a certain claim audited and certified by the executive council. An order was granted as prayed, and defendant appeals.—*Affirmed.*

*Cummins & Wright* for appellant.

*John Y. Stone*, attorney general, for appellee.

GIVEN, J.—I. The claim in question is for the subsistence and compensation of a part of the military force of the state while in the actual service of the state, under an order of the governor, to prevent breaches of the peace, of which there was imminent danger. The occasion upon which this military force was ordered into actual service was when twelve hundred or more destitute men, commonly known as "Kelley's Army," were about to enter the state in a body at Council Bluffs, Pottawattamie county. The reasons for his action are stated by the governor in his evidence as follows: "I received such information as led me to believe that they intended to cross the Missouri river at Council Bluffs, with the purpose to cross this state from west to east; that they had no means of subsistence except what they could take by force; and that their purpose was to commit breaches of the peace along their line of march across the state in securing subsistence and transportation, unless the same should be reluctantly given them by the citizens of the state. In this belief, and for the purpose of preventing or avoiding the disorder and the breaches of the peace thus threatened, I, as governor and commander in chief, ordered out eight companies of the Iowa National Guard, and directed them to concentrate at Council Bluffs, ordering General John R. Prime, adjutant general, to repair there at once, and assume immediate command of the united forces. This I did under the authority of section 4 of chapter 74 of the Acts of the

Eighteenth General Assembly." No question is made, in this case, as to either the authority or necessity for the governor's action. Neither is it questioned but that the claim is just and correct, and should be paid. It is conceded that the adjutant general is entitled to receive the entire sum due, four thousand, one hundred and two dollars and eleven cents, from the source by which it is payable, for disbursement to the persons entitled thereto. The claim was presented by the adjutant general, under whose immediate command the services were rendered, and upon whose order the expenses were incurred, to the executive council, by whom it was audited and certified under section 120 of the Code. Appellant refused to issue a warrant on the treasurer for the payment of this claim on the certificate of the executive council, and in support of his position contends that the claim is chargeable to Pottawattamie county, under section 8, chapter 74, Acts, Eighteenth General Assembly, and that, if not so payable, it is payable out of the appropriations made in section 51 of said chapter 74, and the additional appropriations thereto made,—section 5, chapter 65, Acts, Twentieth General Assembly, and section 19, chapter 31, Acts, Twenty-fourth General Assembly.

II. We first inquire whether the claim is chargeable to Pottawattamie county. Section 5 of said chapter 74 is as follows: "In case of any breach of the peace, tumult, riot or resistance to process of this state, or imminent danger thereof, it shall be lawful for the sheriff of any county to call for aid upon the commandant of any military force within his county, immediately notifying the governor of such action; and it shall be the duty of the commandant upon whom such call is made, to order out in aid of the civil authorities the military force, or any part thereof, under his command." Section 8 provides that "all officers and soldiers while on duty or assembled therefor pursuant to

the order of any sheriff of any county in cases of riot, tumult, breach of peace, or whenever called upon to aid the civil authorities shall receive the same compensation as provided for in section 7, and such compensation shall be audited, allowed and paid by the supervisors of the county where such service is rendered." Section 7 provides: "The military forces of this state, when in the actual service of the state in time of insurrection, invasion, or immediate danger thereof, shall, during their time of service, be paid by an appropriation especially made therefor, the following sums each, for every day actually on duty." Following this is an enumeration of the *per diem* to be paid. It will be observed that it is only upon the military forces within his county that a sheriff may call for aid, and that it is only for services rendered "pursuant to the order of any sheriff" that compensation is to be paid by the county. These troops were ordered into service by the governor, and from other counties than Pottawattamie. The services thus rendered in that county were not rendered upon the call of the sheriff thereof. We are clearly of the opinion that the claim in question is not chargeable to Pottawattamie county.

III. We next inquire whether said claim is payable out of the appropriations made in said chapters 74, 65, and 31. The appropriation in section 51, chapter 74, is as follows: "There is hereby appropriated the sum of twenty thousand dollars per annum, or so much thereof as may be necessary, out of the state treasury not otherwise appropriated, for the purposes named in this act." It further provides that warrants against said appropriations shall be drawn "upon the certificate of the adjutant general, approved by the governor." Section 5, chapter 65, Acts, Twentieth General Assembly, appropriated an additional fifteen thousand dollars per annum "for the purpose of carrying out the provisions of chapter 74,

Laws of the Eighteenth General Assembly as herein amended." Section 19 of said chapter 31 makes an additional appropriation of ten thousand dollars per annum "for the purpose of carrying out the provision of chapter 74, Laws of the Eighteenth General Assembly as amended by chapter 65, Laws of the Twentieth General Assembly, and as herein further amended." These troops were called into actual service by the governor, under section 4 of said chapter 74, giving him authority, "in case of insurrection, invasion, or breaches of the peace, or imminent danger thereof, to order into the service of the state such of its military force as he may deem proper and under the command of such officers as he shall designate." It will be observed that these appropriations are made for the purposes named in chapter 74, and for the purpose of carrying out the provisions of chapter 74 as amended. One of the purposes named in chapter 74 is the suppression or prevention of breaches of the peace, and it was for the latter purpose that these troops were ordered into service. Section 7 does not provide for paying for subsistence of troops in actual service, but only the *per diem* to be paid for the service "in time of insurrection, invasion or immediate danger thereof." This section does not embrace services rendered in suppressing or preventing breaches of the peace. Ordinarily, if not uniformly, breaches of the peace are prevented or suppressed with much less force, and consequently with much less expense, than attends the suppression or prevention of an insurrection or the repulsion of an invasion.

We are inclined to think that it was because of these differences that breaches of the peace were omitted from the provisions of section 7, and that "an appropriation especially made" is required to cover the expenses incurred in cases of insurrection or invasion. It seems to us quite clear that this indebtedness was

incurred in carrying out one of the purposes named in said chapter 74 as amended, namely, the prevention of breaches of the peace. The question still remains whether it was the legislative intention that claims like this should be paid out of the appropriations mentioned. Chapter 74, as amended, is quite specific in providing the purposes for which payments are to be made under it. It provides specifically as to uniforming and equipping the troops, the payment of the expenses of courts martial, the amount to be allowed for postage, armory rent, clerk hire, compensation of the adjutant general, and for compensation and supplies for the troops when ordered out on requisition of the president and by the commander in chief "for encampment or drill." The rate of compensation fixed in said section 7 is limited to service "in time of insurrection, invasion, or immediate danger thereof," and is only payable "by an appropriation especially made therefor." Chapter 74 and the amendments thereto are silent as to how troops serving as in the instance under consideration are to be subsisted or paid, and as to the rate of compensation. The appropriation made in said section 51 is coupled with the express provision that "no indebtedness shall be created under the provisions of this act not covered by the appropriation herein made." To say that this claim is payable out of these appropriations would be to hold that no indebtedness may be incurred beyond the appropriation by the use of the military in suppressing or preventing breaches of the peace. Surely, it is not intended that the hand of the executive must be stayed in putting down or preventing breaches of the peace whenever the appropriation becomes exhausted. While we regard the claim in question as recognized by law, we are of the opinion, upon a view of all the provisions of said chapter 74 and amendments, that it was not intended by the legislature that claims like this

should be paid out of said appropriations, but rather that they should be limited to the specific purposes provided in the act.

IV.    Thus far we have seen that this claim is recognized by law, is not chargeable to Pottawattamie county, and is not payable out of the appropriations made for carrying out the purposes of chapter 74 as amended.    With these conclusions in mind, we now inquire whether, under the provisions of section 120 of the Code, the executive council had authority to audit and certify this claim as it did. Said section, as amended by section 8, chapter 142, Acts of Sixteenth General Assembly, is as follows: "The executive council shall have the charge, care, and custody of the property of the state, when no other provision is made, and shall procure for the several offices of the governor, secretary of state, auditor, and treasurer of state, register of state land office, superintendent of public instruction, attorney general, and state librarian, and clerk and reporter of the supreme court, fuel, lights, blank books, postage, furniture, and any other thing necessary to enable such officers to promptly and efficiently perform the duties of their several offices; the accounts for any expenditures under this section, including repairs of the statehouse and such other necessary and lawful expenses as are not otherwise provided for shall be audited upon the certificate of such council and the warrants drawn therefor paid by the treasurer of state.    The executive council shall report to each regular session of the general assembly the amounts expended; and in general terms what for and how much for each office."

This section, as it formerly stood, did not include the reporter of the supreme court, the provision for postage, nor the following language:    "Including repairs of the statehouse and such other necessary and lawful expenses as are not otherwise provided for."    It

formerly provided that the warrants "shall state on their face, 'for allowance by executive council.' "

Appellee's contention is that this claim is a "necessary and lawful expense," as it was necessary to enable the governor "to promptly and efficiently perform the duties of his office," namely, to prevent the breaches of the peace that were imminent; and that, as it is not otherwise provided for, it is payable upon the certificate of the executive council. This section itself provides for all expenses incurred in supplying the offices named with the articles specified, "and any other thing necessary," and for repairs of the statehouse. The provision as to "such other necessary and lawful expenses as are not otherwise provided for" must relate to expenses other than those incurred in supplying the offices, in caring for the property, and in repairs of the statehouse. As to these matters, we can not conceive of any expense that is not provided for. The theory of our statute is that all demands against the state, except where the amount to be paid is fixed by statute, as in the case of salaries, must be audited and certified to the auditor by some board or officer authorized to do so. Section 120, as amended, authorizes the executive council to audit and certify claims for "necessary and lawful expenses" when there is no provision for their being audited and certified by some other board or officer. This claim is recognized by law. It was a necessary and lawful expense, and there is no provision for its being audited and certified by any other board or officer, and it was therefore within the jurisdiction of the executive council to audit and certify the same.

V. This claim being for a necessary and lawful expense, and properly audited and certified by the executive council, our next inquiry is whether it was then the duty of the appellant to issue a warrant on the treasurer for the payment thereof. Section 24, article 3, of the constitution is as follows:

"No money shall be drawn from the treasury but in consequence of appropriations made by law." It is not questioned but that, if there is no appropriation out of which this claim was payable, appellant was justified in refusing to issue his warrant therefor. It is not claimed by either party that there is any appropriation, other than the one we have considered, from which this claim may be paid, except as it is contended by appellee that it is payable under said section 120. The remaining question, then, is whether payment of this claim is authorized by said section 120. "Appropriation, as applied to the general fund in the treasury, may perhaps be defined to be an authority from the legislature, given at the proper time, and in legal form, to the proper officers, to apply sums of money out of that which may be in the treasury, in a given year, to specified objects or demands against the state." *Ristine v. State*, 20 Ind. 338. Our inquiry, then, is whether, at the proper time, and in legal form, the general assembly has authorized the executive council to apply sums of money out of that which may be in the treasury to the payment of necessary and lawful expenses not otherwise provided for. In arriving at the intention of the legislature in the enactment of said section 120 and its amendments, it is proper that we note something of the history of legislation relating to appropriations. For many years, expenses incurred in providing the several offices named in section 120, as therein authorized, have been paid under the authority of that section alone; no special appropriations having been made therefor. Many other items of expense authorized by law but for which no specific appropriation was made, have also been paid upon the certificate of the executive council under said section 120. These payments, made during the biennial periods, have been reported in detail to each succeeding general assembly.

It would seem that the general assembly acquiesced in the right to make these payments under said section 120 from the fact that it made no other, or more specific, appropriations for the expenses which were being thus paid. While it is true that an unauthorized payment is not authority in the construction of the section, yet we think this long acquiescence on the part of the general assembly in what was being done under authority of that section may be considered in determining the legislative intent. If it be doubtful whether the legislature intended by that section that necessary and lawful expenses not otherwise provided for should be paid upon the certificate of the executive council, the section should not be so construed; but, if such was clearly the legislative intention, such a construction is warranted. The section not only provides that the council shall audit and certify necessary and lawful expenses not otherwise provided for, but that the warrants drawn therefor shall be paid by the treasurer of state. Here we have the general assembly providing, at the proper time, and in the form of an act, that certain officers named shall apply money in the treasury to the payment of necessary and lawful expenses not otherwise provided for. We have seen that this expense was not only necessary, but lawful, and that it is not otherwise provided for. It seems to us reasonably clear that if it was not intended that the expense incurred for the several purposes named in section 120, and necessary and lawful expenses not otherwise provided for, were to be paid under authority of that section, the general assembly would surely have made specific appropriation therefor. We can not believe that it was the intention of the legislature that the various items of expense which it expressly authorized, and which were necessary in carrying on the government of the state, were to be incurred without provision for payment. While it is true that said section 120 does not employ the language usually found in laws appro-

priating money, still we think it was the intention of the legislature that under authority of section 120 all the expenses authorized under it, and all other necessary and lawful expenses for which no other appropriation was made, should be paid out of any money in the treasury not otherwise appropriated, upon the certificate of the executive council, and that upon such certificate, it is the duty of the auditor to draw his warrant therefor, and of the treasurer to pay the same. It will be observed that it is only accounts for expenditures under the section, and lawful and necessary expenses not otherwise provided for, that may be audited, certified, and paid under section 120. Though the claim be ever so necessary, if it is not authorized by law, or, though authorized by law, but not necessary, it can not be certified and paid under said section 120. It follows from the conclusions announced that the judgment of the district court must be AFFIRMED.