J. WESLEY GRAHAM, appellant, v. LORNE R. WORTHINGTON, Auditor of State, et al., appellees; IOWA STATE BAR ASSOCIATION, intervenor-appellee.

No. 52330.

November 15, 1966.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Joseph S. Brick, Special Assistant Attorney General, and Wade Clarke, Jr., Assistant Attorney General, for appellees.

Swift, Brown, Schaetzle & Randall, of Des Moines, for intervenor-appellee.

RAWLINGS, J.—By declaratory judgment proceedings and for injunctive relief plaintiff attacks the constitutionality and legality of chapter 79, Laws of the Sixty-first General Assembly (chapter 25A, Code, 1966), designated the Iowa Tort Claims Act.

Prior to enactment of chapter 25A, Code, the doctrine of governmental immunity was held by us to be applicable to the State and all of its political subdivisions. We also decided not to interfere and by judicial decision overrule a public policy more appropriately left to the legislature. · Montandon v. Hargrave

Construction Co., 256 Iowa 1297, 1299, 1300, 130 N.W.2d 659.

Now the legislature has acted and plaintiff challenges the results obtained.

By this legislative enactment provision is made for filing, passing upon, allowing and paying claims against the State of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death by the negligent or wrongful act or omission of any employee of the state while acting within the scope or office of his employment.

Defendants were joined by intervenor-appellee in denying unconstitutionality of the subject Act.

The trial court held adverse to plaintiff and he appealed.

In asserting propositions relied on for reversal he contends the trial court erred in holding the Act did not violate the following provisions of the Constitution of Iowa: Article I, section 6; Article III, section 1; Article III, section 24; Article III, section 29; Article III, section 31; and Article VII. He also claims the Act violates Amendment 5 and Amendment 14, section 1, Constitution of the United States. Plaintiff thus assumes a heavy burden.

█ I. Our review is de novo. Section 624.4, Code, 1962, and rule 344, Rules of Civil Procedure.

Since the case was submitted upon a stipulation as to standing of the parties, pleadings and briefs, no findings of fact are here involved. We accordingly concern ourselves with the legal issues presented.

█ It is of course understood the legislature may enact any law desired provided it is not clearly prohibited by some provision of the Federal or State Constitution. Tice v. Wilmington Chemical Corporation, 259 Iowa 27, 36, 141 N.W.2d 616, 622; Bulova Watch Co. v. Robinson Wholesale Co., 252 Iowa 740, 746, 108 N.W.2d 365; and Dickinson v. Porter, 240 Iowa 393, 399, 35 N.W.2d 66.

██ And in Green v. City of Mount Pleasant, 256 Iowa 1184, 1196, 131 N.W.2d 5, this court held: The judicial branch of the government has no power to determine whether legislative Acts are wise or unwise, nor has it the power to declare an Act void unless it is plainly and without doubt repugnant to some

provision of the Constitution. There is no presumption against constitutional validity of a statute. Every reasonable presumption must be called to support the Act. A challenging party must overcome these presumptions and negative every reasonable basis which will sustain the statute. See also Kruck v. Needles, 259 Iowa 470, 144 N.W.2d 296, 301, 302; Powers v. McCullough, 258 Iowa 738, 745, 746, 140 N.W.2d 378, 383, 384; Steinberg-Baum & Co. v. Countryman, 247 Iowa 923, 929, 77 N.W.2d 15; and Knorr v. Beardsley, 240 Iowa 828, 839, 38 N.W.2d 236.

Then in State v. Fairmont Creamery Co., 153 Iowa 702, 711, 133 N.W. 895, 42 L. R. A., N. S., 821, we said: "The Constitution was intended to announce certain basic principles to serve as the perpetual foundation of the state. It was not intended to be a limitation upon its healthful development, nor to be an obstruction to its progress. New days bring new problems. Legislation must meet these problems as they come; otherwise our plan of government must prove inadequate. Manifestly, we ought not to be swift to adopt such a technical or strained construction of the Constitution as would unduly impair the efficiency of the legislature to meet its unavoidable responsibilities."

See also Diamond Auto Sales, Inc. v. Erbe, 251 Iowa 1330, 1336, 105 N.W.2d 650, and Miller v. Schuster, 227 Iowa 1005, 1014, 1015, 289 N.W. 702.

Also, if the constitutionality of an Act is merely doubtful or fairly debatable, the courts will not interfere. Long v. Board of Supervisors, 258 Iowa 1278, 1283, 142 N.W.2d 378, 381, and Stewart v. Board of Supervisors, 30 Iowa 9, 13–19, 1 Am. Rep. 238.

II. Plaintiff asserts a violation of Article III, section 29, of the Constitution of Iowa in that title to the subject Act refers only to claims against the state, and liability of the state, while the Act itself subjects the state to liability for (1) torts of officers, agents and employees of state agencies, and (2) all political subdivisions of the state such as cities, towns, school districts and counties.

The title of the Act now identified as chapter 25A is as follows: "AN ACT to create and establish a state tort claims Act; defining terms and conferring upon the state appeal board on

behalf of the state the power to determine certain claims against the state; permitting the state to be sued and waiving the state's immunity from liability to the extent provided herein; conferring jurisdiction in the district court to hear, determine, and render judgment; and generally providing for the practice and procedure to establish liability of the state on tort claims."

Article III, section 29, provides in part: "Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title."

 In Long v. Board of Supervisors, 258 Iowa 1278, 1282, 1283, 142 N.W.2d 378, 381, we held Article III, section 29, of our Constitution should be liberally construed so one Act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto. Also it is of no importance that a law contains matters which might be and usually are contained in separate Acts or would be more logically classified as belonging to different subjects provided only they are germane to the general subject of the Act in which they are put. And see Green v. City of Mount Pleasant, 256 Iowa 1184, 1198, 1199, 131 N.W.2d 5.

 It is to us evident the subject Act expressly waives the common-law governmental immunity of the State of Iowa as to certain claims for the torts of officers, agents or employees of the state or of any department, agency, board, bureau or commission of the state, together with certain governmental corporations as defined by the Act. Sections 25A.2(5) and 25A.4, Code, 1966; Dalehite v. United States, 346 U. S. 15, 17, 73 S. Ct. 956, 959, 97 L. Ed. 1427; Jones v. United States, 126 F. Supp. 10, 12, affirmed 97 App. D. C. 81, 228 F.2d 52; 81 C. J. S., States, section 130(b), page 1139; and 49 Am. Jur., States, Territories, and Dependencies, section 76, page 288. See also Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 341–348, 127 N.W.2d 606.

It is also apparent the matter of payment is logically a part of those provisions of the title of the Act conferring jurisdiction to determine certain claims; to hear, determine and render judgment; and generally providing procedures to establish liability

of the state on tort claims. Surely no reasonable person would be deceived or misled as to disposition of claims determined or judgments rendered. The self-evident purpose of the Act is to provide an orderly method by which to compensate those tortiously damaged by any officer, agent or employee of the state as defined by the Act. See section 25A.4, Code, 1966; Long v. Board of Supervisors, 258 Iowa 1278, 1288, 142 N.W.2d 378, 384; and Knorr v. Beardsley, 240 Iowa 828, 856–859, 38 N.W.2d 236.

And since the state is known to function only by and through its officers, agents or employees, their inclusion within the body of the Act is certainly germane to and not incongruous with the general subject expressed in the title.

III. Plaintiff urges the phrase "instrumentalities or agencies of the State of Iowa" includes cities and towns, school districts and counties but the title of the Act does not so disclose. We cannot agree with this interpretation.

Ordinarily political subdivisions of the state are classified as agencies or arms of the state, more particularly identified as municipalities or quasi corporations. See Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 339, 340, 127 N.W.2d 606; Hanson v. City of Cresco, 132 Iowa 533, 535–542, 109 N.W. 1109; Ciulla v. State, 191 Misc. 528, 77 N. Y. S.2d 545; 49 Am. Jur., States, Territories, and Dependencies, section 101, page 317; 62 C. J. S., Municipal Corporations, section 4, page 74; 37 Am. Jur., Municipal Corporations, section 6, page 623; 78 C. J. S., Schools and School Districts, section 25, page 659; 47 Am. Jur., Schools, section 12, page 304; 20 C. J. S., Counties, section 4, page 759; 20 Am. Jur.2d Supp., Counties, section 4, page 186; 11 Drake Law Review 79; and Charles S. Rhyne on Municipal Law (1957), sections 1.1–1.4, pages 1–8, and section 4.6, page 68.

However, this court has repeatedly held the legislature may be its own lexicographer. Hill v. Electronics Corp. of America, 253 Iowa 581, 587, 113 N.W.2d 313; Cowman v. Hansen, 250 Iowa 358, 363, 92 N.W.2d 682; Dingman v. City of Council Bluffs, 249 Iowa 1121, 1128, 90 N.W.2d 742. See also 82 C. J. S., Statutes, section 315, page 536, and 50 Am. Jur., Statutes, section 262, page 254.

In this connection the pertinent portions of section 25A.2 provide as follows:

"1. 'State agency' includes all * * *, agencies, * * * of the state of Iowa, and corporations *whose primary function is to act as, and while acting as, instrumentalities or agencies of the state of Iowa, * * *.*"

"3. 'Employee of the state' includes any one or more officers or employees of the state or any state agency, and persons acting on behalf of the state or any state agency in any official capacity, * * *.

"4. 'Acting within the scope of his office or employment' means acting in his line of duty *as an employee of the state.*

"5. 'Claim' means any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of his office or employment, *under circumstances where the state,* if a private person, would be liable to the claimant for such damage, loss, injury, or death, * * *." (Emphasis supplied.) See also sections 25A.10, 25A.14 and 25A.20, Code, 1966. .

We are satisfied political subdivisions such as cities, school districts and counties are *neither agencies of the state nor corporations as those terms are employed and defined in the Act,* and are not included within its clear intent and purpose.

Surely the officers, agents and employees of political subdivisions are not officers, agents and employees of the state while acting within the scope of their office or employment.

In addition, chapter 25A provides no procedures for filing and passing upon claims against any political subdivision of the state nor any means or method for paying such claims. Neither is provision made for reimbursement to the state as to any payment made involving the tort of officers, agents or employees of subordinate political entities.

In that respect we cannot assume the legislature intended to enact a futile and ineffectual law, or one which would lead to absurd consequences. State v. Bishop, 257 Iowa 336, 339, 132 N.W.2d 455, 457; France v. Benter, 256 Iowa 534, 541, 128

N.W.2d 268; Iowa Power & Light Co. v. Pleasant Hill, 253 Iowa 532, 536, 112 N.W.2d 304; Appleby v. Farmers State Bank of Dows, 244 Iowa 288, 295, 56 N.W.2d 917; and Case v. Olson, 234 Iowa 869, 872, 873, 14 N.W.2d 717. See also Kruck v. Needles, 259 Iowa 470, 478, 144 N.W.2d 296, 301.

And when two constructions are possible, the one will be adopted which does not lead to consequences which would serve to make an Act unconstitutional.

If the legislature had intended to eliminate the doctrine of governmental immunity, as to all political subdivisions of the state, it could easily have so declared. This it did not do and it is not for us to so extend, enlarge or otherwise change the terms or plain intent and meaning of the statute. Rule 344(f) (13), R. C. P., and Bergeson v. Pesch, 254 Iowa 223, 227, 117 N.W.2d 431.

When considered in its entirety the Act discloses no intent on the part of the legislature to waive existing governmental immunities of those entities or subordinate units of the state commonly classified as political subdivisions. See in this connection Dingman v. City of Council Bluffs, 249 Iowa 1121, 1128, 90 N.W.2d 742, and Ferguson v. Brick, 248 Iowa 839, 845, 82 N.W.2d 849.

IV. Plaintiff also maintains the Act here in question violates that portion of Article III, section 31, of our state Constitution which provides as follows: "* * * nor, shall any money be *paid* on any claim, the subject matter of which shall not have been provided for by pre-existing laws, and no public money or property shall be appropriated for local, or private purposes, * * *." (Emphasis supplied.)

The complaint made is directed first to that provision of section 25A.2(5) which states: "However, 'claim' includes only such claims accruing on or after January 1, 1963."

By its terms the Iowa Tort Claims Act became effective March 30, 1965. This then means claims which may have accrued anytime within two years and three months before its effective date are embraced within the terms of the enactment.

The question now presented is whether *disbursement* of funds for torts committed prior to the effective date of the Act

would constitute payment of money, the subject matter of which was not provided for by any previously enacted law.

By way of exclusion it should be here noted we are not, at this point of the case, concerned with any issue pertaining to contractual obligations or with an attempted delegation of authority to cities and towns to appropriate public funds to private use without public benefit as in Love v. City of Des Moines, 210 Iowa 90, 230 N.W. 373. There an appropriation of public funds for private purposes, a bonus to contractors without public benefit, was held to be clearly disclosed and constitutionally condemned. As later disclosed that is not the situation in the case now before us.

"Claim" as the word is used in the Act means a demand for compensation by reason of a tort alleged to have been committed by an officer, agent or employee of the state. Section 25A.2(5). The definition supplied by the Act must be and is accepted.

Of necessity the tort always precedes the demand. Until there has been a determination as to the propriety and merits of any claim coming within the class prescribed by the Act there is no indebtedness. Edge v. Brice, 253 Iowa 710, 716, 113 N.W.2d 755.

And under the provisions of the law no money can be *paid* on any claim prior to a determination or adjudication pursuant to that legislation with which we are here dealing. Section 25A.11.

If the General Assembly convened in one session may appropriate funds for payment of claims by reason of some act committed prior to that session, it may surely be its own author in determining retrospectively the time limit as to those claims or classes of claims which the state will entertain. 53 C. J. S., Limitations of Actions, section 2, page 905; 34 Am. Jur., Limitation of Actions, section 17, page 26; and 16 Am. Jur.2d, Constitutional Law, section 433, page 777.

This does not constitute a retrospective application of the law. It is but the recognition of existing wrongs for which compensable redress is provided. See in this regard Grout v. Kendall, 195 Iowa 467, 482, 483, 192 N.W. 529, and State of Maryland v. United States, 165 F.2d 869, 1 A. L. R.2d 213.

Any money paid will be only as provided by pre-existing law, to-wit: the Iowa Tort Claims Act.

V. All legislative power of this state is vested in the General Assembly. Article III, section 1, Constitution of Iowa. And we are satisfied the law here challenged does not serve to unconstitutionally delegate legislative power.

The General Assembly, by chapter 25A, waived governmental immunity of the state and designated the class of claims for which redress might be had. It also prescribed the standards and mechanics for presentation, consideration, determination, adjudication, and subsequent payment of those claims factually found to be meritorious under the Act. Sections 25A.2, 25A.3, 25A.4, 25A.6 and 25A.13, Code, 1966. See also Spurbeck v. Statton, 252 Iowa 279, 286, 106 N.W.2d 660, and State v. Van Trump, 224 Iowa 504, 275 N.W. 569.

It is for the General Assembly to enact laws governing expenditure of state funds including the appropriation of moneys for payment. But once this is constitutionally done the procedures, mechanics, the fact finding process upon which payment shall be made, may with reasonably proper guides or standards be delegated to judicial or quasi-judicial bodies. Spurbeck v. Statton, supra; In re Appeal of Beasley Bros., 206 Iowa 229, 233, 220 N.W. 306; In re Assessment Sioux City Stock Yards Co., 149 Iowa 5, 10–12, 127 N.W. 1102; and 16 C. J. S., Constitutional Law, sections 138, 139, pages 570–636.

Furthermore payment of claims against the state of Iowa is not exclusively a legislative function. 16 C. J. S., Constitutional Law, sections 104–107, pages 483–495, and 16 Am. Jur.2d, Constitutional Law, sections 227–230, pages 475–481. Nothing contained in Article III, section 31, of the Iowa Constitution infers to the contrary.

The attorney general, state appeal board, or the district court, as the case may be, simply determines the facts on claims properly presented which are embraced within the terms of the Act itself, and adjudicate rights accordingly. Sections 25A.6 and 25A.13.

The authority so delegated is at most administrative, quasi-

858

judicial and judicial with adequate guides and standards provided.

So we have here a law by which the General Assembly delegated a power to ascertain the persons entitled to relief under the subject legislative enactment, the merit or lack of merit of their claims, and the amount, if any, to be allowed according to the factual proof made. This it could constitutionally do. Spurbeck v. Statton, 252 Iowa 279, 286, 287, 106 N.W.2d 660; Miller v. Schuster, 227 Iowa 1005, 1014–1020, 289 N.W. 702; United States v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 484, 55 L. Ed. 563; Bailey v. Van Pelt, 78 Fla. 337, 82 So. 789, 794; and 16 C. J. S., Constitutional Law, section 138(b)(16), page 614.

To hold otherwise, as a general principle, would in some instances needlessly block the wheels of government.

 VI. It is also evident the Act does not authorize payment of tort claims with public moneys which have not been lawfully appropriated.

 In the first place Article III, section 31, of the Iowa Constitution is not violated by an appropriation of public funds for public purposes.

This court said in Dickinson v. Porter, 240 Iowa 393, 416, 35 N.W.2d 66, as follows:

"The authorities agree not only that the legislature has the broadest discretion as to what is a public purpose but also that such question is a changing one. [Citations] The tendency of later cases is toward greater liberality in characterizing taxes or appropriations as public in purpose. [Citations]

 "A law may serve the public interest although it benefits certain individuals or classes more than others. [Citations]

"Carmichael v. Southern Coal & Coke Co., supra, 301 U. S. 495, 515, 57 S. Ct. 868, 875, 81 L. Ed. 1245, 1256, 109 A. L. R. 1327, 1336, states: '* * * whether the present expenditure serves a public purpose is a practical question addressed to the law-making department, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court.' [Citations]."

See also Hansen v. State of Iowa, 249 Iowa 1147, 1151, 91 N.W.2d 555.

 Moreover the state may recognize moral or equitable obligations and appropriate public funds for payment. In this connection we said in Grout v. Kendall, 195 Iowa 467, 477, 192 N.W. 529:

"Whether a particular purpose is a public purpose and whether it has the sanction of a moral obligation of the state are questions which have never been definitely answered or defined. It has been quite uniformly held by the courts that the determination of such questions inheres largely in the legislative power. Within the zone of doubt, that *is* a moral obligation of the state and that *is* a public purpose which the legislature deems to be such."

Also in this same case at pages 482, 483 of the Iowa Reports, we said: "As to the * * * proposition, that there is no legislative power to appropriate money to an individual or class except in discharge of a legal obligation, as distinguished from a moral obligation, we deal again with an abstract proposition that is not easy to define. In the judicial pronouncements under consideration, no attempt is made to define a legal obligation as between a state and an individual. But if anything is to be built upon such pronouncement, a definition must be made, sooner or later. It ought to be found before the building is begun. Antecedent to any legislative enactment thereon, what is a legal obligation of the state to an individual or class? How is such an obligation created? Suppose we say that the bonds of a state are strictly legal obligations. But such obligation is not *antecedent* to legislative enactment thereon. Valid bonds are issued only pursuant to legislative enactment, and they become legal obligations *because* of legislative enactment. It must be deemed notoriously true that the great body of legislative appropriations are made for uses which constitute no legal obligation on the part of the state, as distinguished from a moral one. When a legislative appropriation is enacted, a legal obligation may and usually does arise. The pronouncement under consideration is that the legislature has no constitutional power to make such an appropriation to the use of any individual or class, except in response to a legal obligation already existing antecedent to the legislation. Now, if there can be, in such cases, no legal obligation without legis-

lative enactment, and no legislative enactment without pre-existing legal obligation, our reasoning is lost in the vicious circle. What becomes of the power of the legislature in the field of appropriation which it has occupied unchallenged for scores of years? Is it not, the rather, true that the legal obligation of the state, as distinguished from a moral one, is a rare and infrequent specimen, and that the state as a sovereign body recognizes claims which rest upon such principles of right and equity as are fundamental to our jurisprudence, and which appeal to the public sense of justice as a moral obligation on the part of the state? Though the legislature has no right to appropriate money as a mere charity or gratuity, yet it does have a right to recognize the essential justice of a claim against the state, as weighed or measured by the standards here indicated."

See also United States v. Realty Co., 163 U. S. 427, 16 S. Ct. 1120, 1127, 41 L. Ed. 215; Hunter v. Colfax Consol. Coal Co., 175 Iowa 245, 297, 306, 154 N.W. 1037, L. R. A. 1917D 15, Ann. Cas. 1917E 803; Metz v. Soule, Kretsinger & Co., 40 Iowa 236; Mills v. Stewart, 76 Mont. 429, 247 P. 332, 47 A. L. R. 424; 16 Am. Jur.2d, Constitutional Law, section 433, page 777; and 49 Am. Jur., States, Territories, and Dependencies, section 73, page 284.

The basic problem at hand, that of torts committed by government officers, agents or employees, has already become one of concern to all people of this state, and with an anticipated population growth it may be expected to soon assume alarming proportions in the absence of some reasonable plan to alleviate the burden. See dissent in Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 349, 127 N.W.2d 606; 81 C. J. S., States, section 1, page 856; 49 Am. Jur., States, Territories, and Dependencies, section 8, page 228.

▮▮▮ The general purpose of chapter 25A is to impose upon all the people of this state the burden, expense and costs which arise from tortious damage to property or injuries to persons by the officers, agents and employees of our state government. This is a valid means of promoting the general welfare of the state. This is a public purpose. See Dalehite v. United States, 346 U. S. 15, 30, 31, 73 S. Ct. 956, 965; Green v. City of Mount

Pleasant, 256 Iowa 1184, 1201–1203, 131 N.W.2d 5; Tepesch v. Johnson, 230 Iowa 37, 40, 296 N.W. 740; and 16 Am. Jur.2d, Constitutional Law, section 311, page 607.

Here is the real distinguishing factor between the case now before us and Love v. City of Des Moines, 210 Iowa 90, 230 N.W. 373.

We can only conclude the General Assembly saw no ultimate advantage to the state by continuing to cast upon some unfortunate individuals the full burden of damage done by the tortious conduct of state officers, agents or employees.

In fact we must assume the Sixty-first General Assembly recognized the problem here posed as one of general concern and elected to effect a solution.

Under these circumstances this court can do nothing other than give due deference to the rule that constitutionality of a legislative Act is especially strong where the statute involved was enacted to promote a public purpose. Cook v. Hannah, 230 Iowa 249, 252, 297 N.W. 262.

VII. In this same vein the subject law does not create a new cause of action. It actually gives recognition to and a remedy for a cause of action already existing by reason of a wrong done but for which redress could not previously be had because of the common-law doctrine of governmental immunity.

In Wittmer v. Letts, 248 Iowa 648, 650, 80 N.W.2d 561, we said: "Under the ancient common law the Sovereign, generally speaking, could not be sued * * *. Thus the State is immune from suit rather than from liability."

And as was stated in Feres v. United States, 340 U. S. 135, 141, 71 S. Ct. 153, 157, 95 L. Ed. 152, 158, a case involving the Federal Tort Claims Act: "It will be seen that this is not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence."

In connection with the foregoing see also section 25A.4, Code, 1966; Boyer v. Iowa High School Athletic Assn., 256 Iowa 337, 345, 127 N.W.2d 606; Montandon v. Hargrave Construction Co., 256 Iowa 1297, 1299, 1300. 130 N.W.2d 659; McGee v. International Life Insurance Co., 355 U. S. 220, 224, 78 S. Ct. 199,

202, 2 L. Ed.2d 223; and Dalehite v. United States, 346 U. S. 15, 43, 44, 73 S. Ct. 956, 972.

VIII. We turn now to the matter of "appropriation" for payment of claims made, determined, allowed and adjudicated.

 Section 25A.11 of the Act provides for payment of any award or judgment out of appropriations made, if any, otherwise to be paid out of any money in the state treasury *not otherwise appropriated.*

Plaintiff claims we should find the subject legislative enactment unconstitutional because no definite amount is appropriated out of some specified fund.

This contention might have some merit if directed to the consideration of those state constitutions which require a specification of amount and funds.

But our constitution only requires there be no expenditure of state funds except upon a legislative appropriation.

The constitutional provisions here concerned simply require appropriation by the legislature, not necessarily an appropriation of a sum certain out of some "earmarked" fund. See Article III, sections 24 and 31, Constitution of Iowa.

In Prime v. McCarthy, 92 Iowa 569, 61 N.W. 220, this court considered the matter of appropriations made by law. There a statute authorized the executive council to provide all things necessary to enable state officers to promptly and effectively fulfill the duties of their offices, including repairs and such necessary and lawful expenditures as are not otherwise provided for, and to audit and certify certain claims created by the exercise of such power. The state treasurer was also authorized to make payment. The question before this court was whether such a statute constituted a valid appropriation and the court held a valid appropriation is authority from the legislature, given at a proper time, in legal form, to the officer, to apply sums of money out of that which may be in the treasury in a given year, to specified objects or demands against the state. In so holding the court said at page 578 of the Iowa Reports: "It seems to us reasonably clear that if it was not intended that the expense incurred for the several purposes * * * necessary and lawful expenses not otherwise provided for, were to be paid under

authority of that section, the general assembly would surely have made specific appropriation therefor."

In the case now before us the amount of the appropriation cannot be predetermined but is limited by the terms of the Act to the amount of awards and judgments to claimants under the provisions of the Act which is a limitation similar to that considered in Prime v. McCarthy, supra.

In support of the foregoing see also Norton v. Lusk, 248 Ala. 110, 26 So.2d 849, 859; State ex rel. Caldwell v. Lee, 157 Fla. 773, 27 So.2d 84; 81 C. J. S., States, section 164(b), page 1215; and 42 Am. Jur., Public Funds, section 46, page 749.

Doubts, if any, on this subject, must be resolved in favor of constitutionality of the Act. Carroll v. City of Cedar Falls, 221 Iowa 277, 290, 261 N.W. 652.

IX. Plaintiff also says the Act violates Article I, section 6, Constitution of Iowa, together with Amendment 5 and Amendment 14, section 1, Constitution of the United States. We cannot agree.

Without passing upon plaintiff's standing to invoke these constitutional provisions, we shall proceed to consider the issues here presented.

Article I, section 6, Iowa Constitution, requires that all laws have a uniform operation and shall not grant privileges which, upon the same terms, do not belong equally to all.

To the extent here applicable section 1, Amendment 14, to United States Constitution, provides substantially the same protection.

Under similar circumstances we said in Dickinson v. Porter, 240 Iowa 393, 400, 35 N.W.2d 66: "In general, if a law does not offend against one constitution it is inoffensive to the other."

Having already concluded the subject appropriation is for a public purpose, the question to be resolved is whether chapter 25A operates equally upon all within the same class and with uniformity.

It is well settled the legislature has a wide discretion in determining the classification to which its Acts shall apply. Dickinson v. Porter, supra, loc. cit. 401.

And it is presumed the General Assembly acted reasonably in classifying those to be accorded right of redress under the Act with which we are here dealing. Iowa Motor Vehicle Assn. v. Board of Railroad Commrs., 207 Iowa 461, 468, 221 N.W. 364, 75 A. L. R. 1.

As previously disclosed the tort immunity of political subdivisions is not here involved. So the focal point of our present inquiry is the matter of remedy to those damaged or injured by the tortious conduct of officers, agents or employees of the state as defined by the Act.

Here again plaintiff appears to single out the coverage of claims for wrongs by the state which may have occurred prior to the effective date of chapter 25A of the Code.

As previously resolved, those so wronged earlier than February 1, 1963, had a cause of action but were barred from any recourse against the state by virtue of the governmental immunity doctrine.

The law with which we are here dealing is surely general in scope and of uniform operation throughout the state. It accords to all damaged or injured by the tort of an officer, agent or employee of the state subsequent to January 1, 1963, a prescribed method and means by which to secure a judicial or quasi-judicial determination of their grievances, denying this right to no person within that designated general field or classification. See McAunich v. Mississippi and Missouri Railroad Co., 20 Iowa 338, 343, 344.

The legislature simply decided those claims arising after the designated date would be accorded recognition under the Act. This is a reasonable classification. Halverson v. Rolvaag, 274 Minn. 273, 143 N.W.2d 239, 242; 16A C. J. S., Constitutional Law, section 560, page 510; and 16 Am. Jur.2d, Constitutional Law, section 512, page 897.

In the absence of any showing of discrimination we can only assume our lawmaking bodies had reasonable, proper and sufficient reason for so doing.

Plaintiff is not deprived of his property without due process of law by the enforced payment on his part of any portion of the tax fund which may be applied to payment of claims

under the Act. McLeland v. Marshall County, 199 Iowa 1232, 1243, 1244, 201 N.W. 401, 405.

In this respect it was pointed out in Stewart v. Board of Supervisors, 30 Iowa 9, 28, 1 Am. Rep. 238, due process of law means ordinary judicial proceedings having no reference to the taxing power of the state. And, as has been previously disclosed, the Act here challenged by plaintiff has a constitutionally sufficient public purpose. From this alone it becomes apparent the subject Act does not violate Amendment 5, Constitution of the United States.

We are satisfied chapter 25A applies to all persons in a like situation and does not unconstitutionally deprive plaintiff of his property without due process of law. In fact there is no legally good or sufficient reason to adjudge the Act violative of Article I, section 6, Constitution of Iowa, or of Amendment 5, or section 1, Amendment 14, Constitution of the United States.

X. Does chapter 25A contravene Article VII, section 1, of the Iowa Constitution? That constitutional provision states as follows: "The credit of the State shall not, in any manner, be given or loaned to, or in aid of, any individual, association, or corporation; and the State shall never assume, or become responsible for, the debts or liabilities of any individual, association, or corporation, unless incurred in time of war for the benefit of the State."

Plaintiff first assails the Act on this point by claiming that where an employee of the state commits a tort, the employee is primarily liable, the state's obligation secondary, and as a result any assumption of the liability of an employee is unconstitutional.

We are not at this time called upon to determine the matter of liability over to the state by an employee for damages paid a third party because of the tort of the employee. But in this regard see section 25A.10, Code, 1966; Gilman v. United States, 206 F.2d 846, affirmed 347 U. S. 507, 74 S. Ct. 695, 98 L. Ed. 898; and Stulginski v. Cizauskas, 125 Conn. 293, 5 A.2d 10, 11, 12.

The question presented is whether the Act serves to make the state responsible for the debts or liabilities of others.

Section 25A.4, Code, provides in part: "The state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, * * *."

It thus becomes apparent that under chapter 25A the rule of respondeat superior becomes applicable with liability restricted to the tort of an officer, agent or employee of the state acting within the scope of office or his employment. See section 25A.2 (5) of the Act and Montanick v. McMillin, 225 Iowa 442, 453, 280 N.W. 608.

The common law imputes to the master the act of the servant, and if the negligent or wrongful act of the servant is the proximate cause of damage or injury to a third person, the negligent or wrongful conduct of the servant is that of the master for which he may be liable. Turner v. Zip Motors, Inc., 245 Iowa 1091, 1097, 65 N.W.2d 427, 45 A. L. R.2d 1174; 57 C. J. S., Master and Servant, sections 555, page 266, and 561, page 272; 35 Am. Jur., Master and Servant, sections 532, page 959, and 543, page 973. See also State of Maryland v. United States, 221 F. Supp. 740, 743.

Furthermore at common law, primary liability for the wrongful act of an agent normally rests upon the employee. Hobbs v. Illinois Cent. R. Co., 171 Iowa 624, 628, 152 N.W. 40, L. R. A. 1917E 1023. This is to say, in cases restricted to master and servant, under common law, the master is liable for the tort of his agent by operation of law. However, the foregoing common-law principle as to primary and secondary liability does not serve to resolve the issue here presented.

The Iowa rule is that at common law the master and servant may *each and both* be liable for a servant's tort committed in the course of employment, with the master ordinarily having right of recourse against the agent in event the former be held liable for negligence of the latter. Montanick v. McMillin, 225 Iowa 442, 452–459, 280 N.W. 608; Hobbs v. Illinois Cent. R. Co., supra; Dunshee v. Standard Oil Co., 165 Iowa 625, 630, 146 N.W. 830; and Restatement, Agency 2d, section 217B.

The net result is that in this state the liability of the master

stands by operation of the law on the same footing as does the liability of the agent.

So it is to us apparent that under the Iowa rule, while liability as between master and servant may be primary and secondary *as to them*, the right of a damaged or injured third party to sue and hold the employer liable is, in effect, a direct or primary right. Anderson v. Abramson, 234 Iowa 792, 794, 13 N.W.2d 315; Montanick v. McMillin, 225 Iowa 442, 453, 280 N.W. 608; Dunshee v. Standard Oil Co., 165 Iowa 625, 630, 146 N.W. 830; Metropolitan Life Ins. Co. v. Huff, 48 Ohio App. 412, 194 N.E. 429, 431; Jones v. Kinney, 113 F. Supp. 923, 925; 57 C. J. S., Master and Servant, section 570(c), page 299; and 35 Am. Jur., Master and Servant, section 532, page 959.

This does not necessarily mean however that in this jurisdiction a party injured by the tort of an agent, acting in the course of employment, may recover from the master if there is no liability on the part of the agent. See Flogel v. Flogel, 257 Iowa 547, 133 N.W.2d 907; Maine v. Maine & Sons Co., 198 Iowa 1278, 1280, 1281, 201 N.W. 20, 37 A. L. R. 161; Blunt v. Brown, 225 F. Supp. 326, 329; and Restatement, Agency 2d, section 217. But see Schubert v. August Schubert Wagon Co., 249 N. Y. 253, 164 N.E. 42, 43, 64 A. L. R. 293; and annotations, 43 A. L. R.2d 632.

Neither does it mean a master is liable for the acts of his agent acting beyond the scope of authority. Grismore v. Consolidated Products Co., 232 Iowa 328, 335, 5 N.W.2d 646, and Restatement, Agency 2d, section 219.

We conclude the Act does not cause the state to assume or be responsible for the debts or liabilities of any individual, association or corporation, and does not violate Article VII, section 1, of our state constitution.

XI. Plaintiff also alleges we are here dealing with a legislative Act which contravenes Article VII, sections 2 through 5, of the Iowa Constitution, but in argument to this court confines himself to sections 2 and 5 of Article VII. We shall treat the matter accordingly. Rule 344(a)(4)(Third), R. C. P.

The pertinent part of section 2 cited above provides as follows: "The State may *contract* debts to supply casual deficits or

failures in revenues, or to meet expenses not otherwise provided for; * * *." (Emphasis supplied.)

Then the material portions of the cited section 5 states: "Except the debts herein before specified in this article, no debt shall be hereafter *contracted* by, or on behalf of this State, unless such debt shall be authorized by some law for some single work or object, to be distinctly specified therein; * * *." (Emphasis supplied.)

By lifting out of context plaintiff argues these constitutional provisions are applicable in the instant case because of reference to all casual deficits or failures in revenues, or to meet expenses not otherwise provided for with fixed limitations. These last quoted portions of our constitution are not applicable to legislative appropriations for payment of tort claims against the state. In any event the stand here taken by plaintiff is without merit.

These two constitutional provisions refer and apply only to *debts contracted* by the state. But judgments or awards entered upon tort claims are not *debts contracted* as the term is here employed.

By the terms of the Act itself, claims based on contract are clearly excluded. Sections 25A.2, 25A.3 and 25A.14.

Furthermore constitutional limitations upon contractual debts do not as a general rule apply to obligations sounding in tort. Stated otherwise a judgment entered in a tort action is not a debt contracted in the constitutional sense. By way of analogy we so held in Ferry v. Campbell, 110 Iowa 290, 300, 81 N.W. 604, 50 L. R. A. 92; Thomas v. City of Burlington, 69 Iowa 140, 142, 28 N.W. 480; Rice v. City of Des Moines, 40 Iowa 638, 646; and Bartle v. City of Des Moines, 38 Iowa 414, 415, 416. See also section 25A.6 of the Act, and 38 Am. Jur., Municipal Corporations, section 454, page 138, and section 456, page 139.

Pursuing this matter one more step, there cannot be a debt or a debtor unless there is a creditor, and while in a certain sense a person offended by the tort of an officer, agent or employee of the state might by judgment become a creditor of the state, we do not find such to come within the constitutional classification of a contracted debt. The person obtaining an award or judgment

for damage or injury sustained is not a voluntary but is rather an involuntary creditor at best. He becomes a creditor just as the state becomes a debtor, by compulsion; not by choice. The elements essential to any contractual relationship are missing. See Thomas v. City of Burlington, supra.

In support of his stand plaintiff refers to State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 223 N.W. 737; Hubbell v. Herring, 216 Iowa 728, 249 N.W. 430; McCullough v. Commonwealth of Virginia, 172 U. S. 102, 19 S. Ct. 134, 43 L. Ed. 382; and Sloan v. State, 51 Wis. 623, 8 N.W. 393. We have examined these authorities and find them either factually or legally inapplicable.

In State ex rel. Fletcher v. Executive Council and Hubbell v. Herring, both supra, the court was dealing with a contractual bond indebtedness. Sloan v. State, supra, involved an action based on quantum meruit for legal services rendered by an attorney who had been employed by the governor. And the case of McCullough v. Commonwealth of Virginia, supra, involved the genuineness of certain coupons tendered in payment of taxes. None of these cases even infers a judgment in tort stands in the shoes of a contract debt.

Plaintiff has failed to establish his claim that the General Assembly, by enactment of chapter 25A, contracted a debt within the meaning of that term as employed by Article VII of our State Constitution.

We now hold the legislature did not contract a constitutionally prohibited debt or debts by enactment of the subject Act.

XII. The same reasoning leads to the same conclusion regarding plaintiff's claim the Act contravenes Article VII, section 5, referred to above.

We are also satisfied the Act does not create a debt of the state which can be said to be binding upon any subsequent legislative assembly.

Chapter 25A does not purport to require any legislature to levy a tax for payment of any contractual or fixed obligation. In fact it does nothing more than provide that awards made or judgments granted upon claims standing in tort shall be paid out of funds appropriated, if any, or out of any money in the state

treasury not otherwise appropriated. See section 25A.11, and Rowley v. Clarke, 162 Iowa 732, 144 N.W. 908.

Briefly stated any tort awards or judgments which may come into being by reason of the Act will, in effect, become nothing more nor less than ordinary or current expenses of the state.

Further in this regard we call attention to the rule that, ordinarily, in matters of government, or public policy, or in the exercise of the police power, one legislative body cannot by its legislation bind the hands of a future legislature respecting the same subject matter. See Talbott v. Independent Sch. Dist., 230 Iowa 949, 967, 299 N.W. 556, 137 A. L. R. 234; Ferry v. Campbell, 110 Iowa 290, 300, 81 N.W.2d 604, 50 L .R. A. 92; and annotations, 42 A. L. R. 1489.

We find no merit in plaintiff's claim that the Act violates Article VII, section 5, of the Constitution of Iowa.

The judgment and decree of the trial court was correct.— Affirmed.

GARFIELD, C. J., and MOORE, STUART, MASON and BECKER, JJ., concur.

SNELL and LARSON, JJ., dissent.

THORNTON, J., not sitting.

SNELL, J.—I reluctantly dissent from the conclusion upholding this Act in its entirety. There is no severability provision in the Act that might save the good and permit rejection of the parts that I think go too far.

My reluctance stems from the fact that I agree with most of what is said and also appreciate the desirability of a State Tort Claims Act. I am fully aware of the rule that doubts should be resolved in favor of constitutionality but in the case before us there is such a waiver of fiscal responsibility by the legislature that I think the Act contravenes the constitution. A new legislature will meet in a little over two months and an Act free from objectionable features could easily correct the situation.

Although it has been a part of our law for nearly 100 years the doctrine of governmental immunity is not of constitutional or legislative origin in our state. It is of judicial origin. I do not question the right of the legislature to abolish it in whole or in part. The doctrine has little, if any, justification in modern law. It has, however, with the acquiescence of our legislature been the public policy of our state for so long that its overruling should operate prospectively and not retroactively. It should not be accompanied by improper delegation or abdication of legislative responsibility.

The Act before us became effective upon publication on March 30, 1965, but operates retroactively to January 1, 1963. This dates the Act back more than two years.

When this Act became effective the Sixty-first General Assembly was in session. Until then the recourse available to a claimant was an Act of the legislature. Chapters 60 and 61, Laws of the Sixty-first General Assembly, show that claims were being considered, allowed and appropriations made therefor. Article III, section 31, of our constitution says: "* * * nor, shall any money be paid on any claim, the subject matter of which shall not have been provided for by pre-existing laws * * *."

Claims paid pursuant to chapters 60 and 61, supra, were paid pursuant to pre-existing consideration by the legislature and by a law specifically providing therefor. They were accordingly paid pursuant to a pre-existing law.

Under the Act now before us the legislature delegates to a nonlegislative body, i.e., the State Appeal Board, not only a legislative but a judicial function. This delegation of authority applies not only to claims arising in the future but retrospectively to claims arising after January 1, 1963. In my opinion, claims existing when the Act was passed were within the exclusive jurisdiction of the legislature and any delegation of authority to pass thereon and pay was beyond the limits of the constitution.

The subject matter of a claim includes both factual and legal questions involved in the particular claim. The delegation to the State Appeal Board of the authority to pass upon and order paid pre-existing claims is not a provision for payment

pursuant to pre-existing law. It is rather the delegation of authority to pay according to what the Appeal Board thinks the law should be. That is beyond the power of the legislature.

In Division IV the majority opinion in discussing claims says: "This does not constitute a retrospective application of the law. It is but the recognition of existing wrongs for which compensable redress is provided."

I do not agree.

Approval of claims such as appear in chapters 60 and 61 are recognitions of existing wrongs for which compensable redress is provided, but the Act under attack delegates to a nonlegislative board the power to determine what is an existing wrong and provide for redress. Only appellate supervision by the courts is provided over the affirmative acts of the Appeal Board and there is no limitation whatsoever by the legislature, except as to the amount of unappropriated funds in the state treasury.

That fact finding and administration can be delegated is not challenged. That appropriations may be made to cover such matters within the limits of the appropriation is recognized, customary and necessary. A glance at chapters 1 to 66, the appropriation Acts of the Sixty-first General Assembly, shows that except where specific amounts are appropriated to specific items the appropriations are for maximum amounts "or so much thereof as may be necessary." Thus the money is drawn from the treasury "in consequence of appropriations made by law." By stating the amounts that may be spent the legislature retains control and establishes limits. A limit is even placed on the appropriation to the general contingency fund. See chapter 65.

Surely no one would advocate or defend an unlimited appropriation to the various departments and agencies of our government of whatever amount the members might find proper.

I, of course, do not expect the Appeal Board under this Act to spend all the so-called surplus in the treasury or bankrupt the state, but I find no limit in the statute as to what can be spent under this Act. I think the delegation of such unlimited power to a nonlegislative body contravenes the constitution. The Act is not to be judged by what we think will happen but rather by what can happen.

In the name of progress this Act goes too far. I think it should be disapproved. It does not even have the respectability of a legalizing act because both prospectively and retroactively it goes beyond proper limits.

I do not think the fact that the purpose of this law is good and for the most part within proper limits justifies our approval in its entirety.

LARSON, J., joins in this dissent.